# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**Eric Brian Rosenberg, aka E. Brian Rose,**
Plaintiff

v.

**CITY OF OCEAN SPRINGS, MISSISSIPPI,**
**KENNY HOLLOWAY,** in his official and individual capacities,
**JENNIFER BURGESS,** in her official and individual capacities,
**PATTY GASTON,** in her official and individual capacities,
**KEN PAPANIA,** in his official and individual capacities,
**MIKE IMPEY,** in his official and individual capacities,
**ROBERT WILKINSON,** in his official and individual capacities,
**KENNY WILLIAMS,** in his official and individual capacities,
**BONNIE MUNRO,** in her official and individual capacities,
**RYAN LEMAIRE,** in his official and individual capacities
and **JOHN/JANE DOES 1-10**
Defendants.

Cause No.:



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

JUN 1 1 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

1:25cv182 HSO-BWR

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS, DEFAMATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND ILLEGAL SURVEILLANCE UNDER MISSISSIPPI LAW

### (JURY TRIAL DEMANDED)

**COMES NOW** the Plaintiff, Eric Brian Rosenberg, also known professionally as E. Brian Rose, in Pro Se, and for his Complaint against the Defendants, alleges and states as follows:

**Introduction**

1. This is an action seeking relief to protect the constitutional, statutory, and common law rights of Plaintiff, Eric Brian Rosenberg, known professionally as E. Brian Rose. Brought under 42 U.S.C. § 1983 and applicable state law, this case arises from a pattern of retaliatory conduct, defamation, and obstruction by the Defendants in response to Plaintiff's exercise of his First Amendment rights as a journalist. Plaintiff, a military-trained journalist, disabled combat veteran, and staunch advocate for freedom of the press, seeks declaratory, injunctive, and other appropriate relief to address violations of his constitutional rights and to remedy the harm caused by Defendants' unlawful actions.

2.  This action seeks redress for violations of Plaintiff's rights under the United States Constitution and Mississippi law. Plaintiff seeks compensatory damages for emotional distress, reputational harm, economic loss, and other injuries; punitive damages for the willful and malicious conduct of individual Defendants; and injunctive and declaratory relief to prevent future retaliation. Plaintiff further seeks all other relief to which he may be entitled under law.

3.  Plaintiff alleges violations of the First, Fourth, and Fourteenth Amendments, the Mississippi Public Records Act, and state laws governing defamation and intentional distress. These claims arise from a coordinated and deliberate campaign of retaliation by Defendants, acting under color of law, designed to punish Plaintiff for his constitutionally protected activities as a journalist.

4.  Defendants' actions include defamatory statements, obstruction of public records access, and interference with Plaintiff's professional relationships. These acts not only caused significant harm to Plaintiff's reputation, career, and emotional well-being but also undermined public trust in government accountability and transparency.

5.  Plaintiff seeks declaratory relief affirming that Defendants' actions violated his constitutional and statutory rights, injunctive relief to prevent further retaliation, compensatory and punitive damages to address the harm caused, and other equitable relief as deemed appropriate by this Court.

6.  Defendants' retaliatory conduct violated clearly established rights under the First and Fourteenth Amendments, as articulated in *Hartman v. Moore, 547 U.S. 250 (2006)* and *Hope v. Pelzer, 536 U.S. 730 (2002)*. These decisions leave no doubt that public officials who intentionally target individuals for exercising their First Amendment rights are not entitled to qualified immunity. The Defendants' actions—fabricated allegations, public defamation, and interference with Plaintiff's employment—exceeded any lawful discretion and were motivated by personal animus. No reasonable official in their position could believe such conduct was lawful.

7.  The First and Fourteenth Amendments unequivocally protect journalists from retaliation by public officials for engaging in lawful reporting, and Mississippi law further protects the public's right to access government records.

8.  This case highlights not only the unconstitutional retaliation against Plaintiff but also a broader culture of misconduct and overreach within Ocean Springs governance.

9.  By holding Defendants accountable, this action seeks to protect not only Plaintiff's rights but also to safeguard the rights of all residents of Ocean Springs and journalists from being subjected to similar unconstitutional conduct. This lawsuit serves as a critical step toward preserving the foundational principles of free speech, press freedom, and government accountability, which are vital to ensuring a transparent and democratic society.

10. Plaintiff emailed preservation notices on December 10, 2024 and subsequently mailed a letter of intent to sue via US Postal Service on or around December 12, 2024 to the City of Ocean Springs, which outlined the basis for forthcoming legal claims under the Mississippi Tort Claims Act. Plaintiff also provided additional written notice in the form of a detailed settlement offer – that was requested by the City Attorney – dated April 25, 2025. Out of an abundance of caution and to eliminate any dispute over notice or content, Plaintiff is contemporaneously sending a supplemental notice by certified mail. The combination of these communications constitutes substantial compliance with Miss. Code Ann. § 11-46-11.

11. Plaintiff is in possession of documentary evidence, including screenshots, recordings, and written communications, which further substantiate the facts alleged herein and will be produced as needed at the appropriate stage of this litigation. Plaintiff will present this compelling and corroborated evidence during discovery and at trial to substantiate each claim and ensure a complete and persuasive record for the Court.

## Parties

4. Plaintiff Eric Brian Rosenberg, known professionally as E. Brian Rose, is a journalist and disabled combat veteran with decades of experience reporting on matters of public concern. Trained by the military in combat journalism, his reporting consistently addresses issues of significant public interest, including governance, policy, and community affairs.

   Plaintiff is a 100% disabled combat veteran diagnosed with several ailments, including sleep disorders, PTSD, vertigo, Mefloquine toxicity poisoning, and others related to his combat deployments.

   Beyond his journalistic work, Plaintiff has authored children's books on the Bill of Rights, aimed at educating young readers about the foundational principles of American democracy. This work reflects Plaintiff's lifelong commitment to promoting transparency, accountability, and the protection of constitutional freedoms. Despite this dedication to ethical journalism and public education, Plaintiff has faced an unprecedented campaign of retaliation and obstruction by the City of Ocean Springs and its officials.

5. Defendant **City of Ocean Springs** is a municipal government organized under the laws of Mississippi.

6. Defendant **Mayor Kenny Holloway** is the Mayor of Ocean Springs and possesses final policymaking authority in matters of administration, public communications, and enforcement of city policies. As detailed in this Complaint, Mayor Holloway used his authority to engage in retaliatory conduct, including repeated attempts to interfere with Plaintiff's professional relationships by contacting Plaintiff's employer. These actions reflect the City's de facto policy of silencing dissent and demonstrate Holloway's direct involvement in violating Plaintiff's constitutional rights. Mayor Holloway is sued in both his official and individual capacities.

7. Defendant **Alderman Jennifer Burgess** represents Ward 1 in Ocean Springs as an elected member of the Board of Aldermen, which exercises legislative and policymaking authority for the city. Burgess engaged in a series of retaliatory actions against Plaintiff, including public defamation, private efforts to disparage Plaintiff to his employer, and a pattern of behavior designed to provoke and discredit Plaintiff. Her actions, as detailed herein, illustrate the City's broader effort to suppress critical reporting and intimidate journalists. Burgess is sued in both her official and individual capacities.

8. **Defendant Mike Impey** is and was, at all times relevant, the duly elected Ward 6 Alderman in Ocean Springs. He is sued in his official capacity for actions taken under color of law, and in his individual capacity for conduct undertaken with malice and outside the scope of legitimate legislative function.

9. Defendant **City Clerk Patty Gaston** is the City Clerk of Ocean Springs, tasked with maintaining public records and ensuring compliance with the Mississippi Public Records Act. Despite this responsibility, Gaston actively obstructed Plaintiff's lawful requests for public records, imposed unreasonable barriers to access, and engaged in defamatory and retaliatory conduct. Her actions, including derogatory communications to Plaintiff's employer and inflammatory public statements, were part of a coordinated campaign to discredit and punish Plaintiff for exercising his First Amendment rights. Gaston is sued in both her official and individual capacities.

10. Defendant former **Chief of Police Ryan Lemaire** made false and defamatory statements during the December 17, 2024, Board of Aldermen meeting, publicly accusing Plaintiff of spreading "100% lies" regarding the city's purchase of an AI-powered vehicle tracking system. These statements were made while he was the Chief of Police. These statements were knowingly false, as city records confirm Plaintiff's reporting was accurate. Lemaire's statements caused significant harm to Plaintiff's professional reputation and were part of a broader effort by city officials to discredit Plaintiff's reporting. He is sued in both his official and individual capacities.

11. **Defendant Robert Wilkinson** was, at all relevant times, the City Attorney for Ocean Springs. He is sued in his official and individual capacities.

12. **Defendant Ken Papania** is an Alderman who, acting under color of law during a public board meeting, attempted to silence Plaintiff during lawful public comment. He is sued in his official and individual capacities.

13. **Defendant Kenny Williams** is a member of the Ocean Springs Redevelopment Authority (RDA), an appointed public body. His retaliatory and defamatory conduct is connected to his official role and public communications. He is sued in his official and individual capacities.

14. **Defendant Bonnie Munro** is the President of the Historic Preservation Commission of Ocean Springs, an appointed public office. She engaged in defamatory and retaliatory public attacks on Plaintiff's character. She is sued in her official and individual capacities.

15. **John/Jane Does 1-10** are currently unidentified individuals who participated in or facilitated the retaliatory conduct and violations of Plaintiff's rights. These individuals include, but are not limited to, city officials or employees who conspired to spread false narratives, obstruct public records access, or engage in other retaliatory acts under the color of law. Plaintiff reserves the right to amend this Complaint to include their names and further allegations as their identities are revealed during discovery.

**Jurisdiction and Venue**

9. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as Plaintiff asserts claims arising under the United States Constitution and 42 U.S.C. § 1983, including violations of his First, Fourth, and Fourteenth Amendment rights. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), as this action seeks to redress the deprivation of rights secured by the Constitution by individuals acting under color of state law.

10. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiff's related state-law claims, including violations of the Mississippi Public Records Act, because these claims arise from the same nucleus of operative facts as Plaintiff's federal claims. Specifically, the

retaliatory withholding of public records by City Clerk Patty Gaston and other city officials directly followed Plaintiff's reporting on matters of public concern, which is central to the First Amendment retaliation claims.

11. The federal claims predominate in this action as they concern the Defendants' violations of clearly established First, Fourth, and Fourteenth Amendment rights, which are the principal basis for the requested declaratory and injunctive relief. The state-law claims supplement the federal claims by addressing additional harm caused by the same retaliatory conduct.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Ocean Springs, Mississippi, where Plaintiff resides and carries out his journalistic activities. Specifically, the retaliatory actions alleged herein, including defamatory statements, interference with Plaintiff's professional relationships, and obstruction of public records access, all occurred within the jurisdiction of this Court during public meetings, in communications originating from city officials, and in response to articles published about Ocean Springs' governance.

## Professional Background and Scope of Reporting

13. The Plaintiff has a long history in journalism, covering governmental affairs over a span of decades. He was trained by the military as a combat journalist and is currently a 100% disabled veteran with disabilities stemming from his combat deployments. Over the last year, Plaintiff began focusing exclusively on local government accountability and transparency across multiple jurisdictions throughout the Mississippi Gulf Coast. Through published articles, the Plaintiff has reported on controversial issues in cities such as Gulfport, Biloxi, and others, addressing topics including ethics violations, zoning disputes, government overreach, and public accountability. Despite addressing sensitive and potentially contentious issues, no jurisdiction, except Ocean Springs, has retaliated against the Plaintiff for his reporting.

## Factual Background

14. The following allegations describe selected examples of retaliation, defamation, and misconduct perpetrated by the Defendants. These are not exhaustive. For the sake of clarity and conciseness, Plaintiff has intentionally limited this Complaint to a representative sample of well-documented incidents. Plaintiff is in possession of additional evidence of retaliatory conduct that has not been included here solely to preserve judicial efficiency and narrative focus. Plaintiff reserves the right to amend this Complaint and to present further facts as they become relevant during discovery, through whistleblowers, public records, or continued investigation. Each example described herein supports Plaintiff's broader Monell claim and illustrates a persistent municipal pattern of unconstitutional conduct.

15. **The Importance of Press Freedom and News Gathering**

The First Amendment to the United States Constitution reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The right to gather and report on news is a foundational component of this commitment. As the Supreme Court has recognized, the First Amendment protects "a right to gather information," because "without some protection for seeking the news, freedom of the press could be eviscerated." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

The Sixth Circuit has similarly observed that "[t]he protected right to publish the news would be of little value in the absence of sources from which to obtain it." *CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975). Thus, "[n]ews gathering . . . qualifies for First Amendment protections." *Id.*

16. The Mississippi Constitution further underscores this principle by explicitly safeguarding freedom of speech and of the press. Article 3, Section 13 of the Mississippi Constitution states: "The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence, and the jury shall determine the law and the facts under the direction of the court." This provision reflects the state's deep commitment to ensuring an informed public and a free press as integral components of its democratic framework.

Mississippi courts have consistently affirmed these constitutional protections. For example, in Associated Press v. Bost, the Mississippi Supreme Court highlighted the essential role of the press in fostering transparency and accountability, recognizing that "freedom of the press and speech are fundamental rights." The court further noted that these rights are indispensable to an open society, safeguarding the public's ability to scrutinize government actions and engage in informed debate.

Taken together, these provisions and judicial interpretations establish a robust framework of legal protections for journalists and news organizations in Mississippi. They affirm that the press serves a critical public interest by providing access to information and fostering civic engagement — **principles that are foundational to both the Mississippi Constitution and the First Amendment of the United States Constitution.**

Plaintiff E. Brian Rose, a journalist with decades of experience — including as a combat journalist in the U.S. military and a reporter for multiple news outlets — has consistently worked to fulfill the First Amendment's promise of a free press by reporting on matters of significant public concern.

Despite this constitutional protection, the City of Ocean Springs and its officials, including but not limited to Mayor Kenny Holloway, Alderman Jennifer Burgess, City Clerk Patty Gaston, Alderman Mike Impey, Alderman Ken Papania, City Attorney Robert Wilkinson, RDA Member Kenny Williams, Historical Preservation Commission President Bonnie Munro, and others have engaged in a pattern of retaliatory and defamatory conduct aimed at silencing Plaintiff's reporting and chilling his exercise of constitutionally protected activities.

While not named as a defendant in this action, former Community Development Director Carter Thompson's actions and statements are included solely to demonstrate a broader pattern of retaliatory behavior and coordination among City of Ocean Springs officials. These events form

part of Plaintiff's Monell claim, establishing the city's tolerance for unconstitutional conduct across departments.

The United States Supreme Court has consistently held that government officials may not retaliate against individuals for exercising their First Amendment rights. In Hartman v. Moore, 547 U.S. 250 (2006), the Court established that retaliatory actions by public officials must meet a causation standard, showing that the retaliatory animus was the but-for cause of the alleged harm. Defendants' actions here fail to meet this standard and instead demonstrate direct retaliation against the Plaintiff for his protected activities.

Additionally, N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964) emphasized the importance of protecting the press from governmental overreach to ensure robust public discourse and accountability. The City of Ocean Springs' campaign of retaliation directly undermines these principles.

In Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court stated that officials are not entitled to qualified immunity when their conduct violates rights that are clearly established in the law. The actions of the Defendants, including obstructing public records access, defamation, and retaliation against protected speech, are violations of clearly established constitutional rights and cannot be shielded by qualified immunity.

17. **Initial Articles**

On or around September 4, 2024, Plaintiff published an article in the Ocean Springs Weekly Record titled "Mayor's Call to 'Step Back' from Online Criticism Sparks Local Debate." This article factually summarized Mayor Kenny Holloway's op-ed urging residents to cease online criticism of the city and included reactions from residents, some supportive and others critical.

On or around September 12, 2024, Plaintiff published an article titled "Local Residents Push Back on 'Hasty' Zoning Changes," documenting the city's failure to meet public notification requirements for a Planning Commission hearing.

The article included quotes from residents, the city clerk's official admission of the notification failure, and factual information about newly hired Community Development Director Carter Thompson's professional history.

18. **City Clerk Patty Gaston's Response to Initial Articles**

Immediately following the publication of the September 12 article, retaliation began.

On or about September 12, 2024, following Plaintiff's publication of an article documenting the City's failure to meet public notification requirements, **City Clerk Patty Gaston** initiated a campaign of retaliation against Plaintiff. Gaston sent a series of text messages to Plaintiff's employer, Leigh Coleman, referring to Plaintiff as "a piece of shit" and falsely accusing him of writing misleading articles. Gaston further threatened to share damaging personal information about Plaintiff, stating in one text, she was preparing to post something on Facebook that will really embarrass the Plaintiff. Gaston asked that Coleman retract or remove the articles, but failed

to provide any details for what was false or misleading. These actions were designed to intimidate Plaintiff and discredit his reporting, directly harming his professional reputation.

In another message sent to Plaintiff's employer shortly before the publication of a critical article, Defendant Gaston texted Plaintiff's employer, stating, "I just received some texts about him. I do have some funny interesting stuff to tell you…" This message shows she was receiving and offering to share derogatory content about Plaintiff with third parties, evidencing her continued intent to damage his reputation and retaliate for his journalism. Gaston's language further demonstrates her personal hostility and misuse of her position to interfere with Plaintiff's professional standing.

Gaston demanded retractions of factual articles and attempted to discredit the Plaintiff's reporting by falsely alleging that his work was being influenced by a political organization with which he had no affiliation. Gaston also took her campaign to social media, posting on The Record's official Facebook page to publicly accuse the Plaintiff of being unprofessional and misleading the public. In one comment, she stated she was "sick of his attitude," while in another, she refused to answer legitimate questions about public issues, opting instead to make dismissive and inflammatory remarks.

These texts, online comments, as well as similarly worded phone calls to Plaintiff's boss, were clear attempts to retaliate against the Plaintiff for his critical reporting on the city's failure to properly notify the public about zoning changes, an issue Gaston herself had admitted to in an email to a resident.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

19. **Further Retaliatory Messages from Gaston**

In or around September 2024, and just before Defendant Patty Gaston publicly posted comments on Facebook about the Plaintiff, she sent a text message to Plaintiff's employer stating, "Next comment from me will insult him. I have had enough of his attitude." This message, which followed Plaintiff's lawful reporting on city governance, was sent with the intent to escalate a public campaign of defamation and to provoke employment consequences for Plaintiff. It demonstrates both her retaliatory motive and her willingness to weaponize her position against protected speech. The message also supports Plaintiff's Monell claim by providing additional proof of a citywide tolerance for unlawful retaliation against journalists.

20. **Plaintiff's First Plea for Help**

In response to City Clerk Patty Gaston's retaliatory actions and going after his job, the Plaintiff wrote a formal letter to the members of the Ocean Springs Board of Aldermen, seeking their intervention.

In the letter, The Plaintiff detailed Gaston's derogatory text messages, her attempts to discredit his journalism, and her threats to reveal personal information to undermine his reputation to his boss. He emphasized the constitutional implications of Gaston's conduct, framing it as a direct

violation of his First Amendment rights and a clear example of government retaliation against a journalist. The Plaintiff called on the Board to investigate Gaston's behavior thoroughly and take appropriate disciplinary action, up to and including termination if warranted. He urged the Board to uphold their oath to the Constitution and ensure that government accountability and transparency were not stifled by such unprofessional and unlawful conduct.

The letter underscored the importance of protecting freedom of the press and ensuring that retaliation against journalists has no place in public governance.

21. **Alderman Burgess Phone Call**

In response to his letter to the Board of Aldermen, Plaintiff received a phone call from **Alderman Jennifer Burgess**. Instead of offering support or addressing his concerns about City Clerk Patty Gaston's retaliatory behavior, Burgess chastised the Plaintiff for his reporting, stating that just because he had the right to report certain things, it didn't mean he should.

Burgess criticized Plaintiff's articles, particularly his decision to let the public know the newly hired Community Development Director Carter Thompson was fired from the last two cities she worked for, with each of those cities citing bad behavior when dealing with coworkers and the public, and that both firings resulting in local media frenzies in those towns. Burgess told Plaintiff that it was "unfortunate" the First Amendment allows him to write some things.

Burgess also referred to the article recapping the mayor's controversial editorial that instructed residents to "step back from the keyboard." She called the factual and balanced article an "attack" and stated, "An attack on the mayor is an attack on all of us," revealing a potential team bias against journalistic oversight of the local government. This statement was made in response to Plaintiff pointing out that he had not written any articles directly about any members of the Board of Aldermen.

Burgess further implied that Plaintiff should allow the city to review his articles before publication as a "courtesy" — an alarming suggestion given his role as an independent journalist.

Perhaps most troubling was that immediately after the call, Burgess did exactly what Plaintiff was originally seeking her help to protect him against – she tried to get him fired for his factual reporting. **Within minutes of hanging up with Plaintiff**, Burgess contacted Plaintiff's boss to disparage him, describing him to the boss as "bad news" and telling the owner that further scrutiny would reveal more negative information about the Plaintiff.

22. **Plaintiff's Public Comments at the Board of Aldermen Meeting**

During the September 17, 2024, Board of Aldermen meeting, Plaintiff made public comments emphasizing his identity as a disabled veteran, trained combat journalist, and advocate for the Bill of Rights. Plaintiff addressed the issues of government transparency and freedom of speech, citing specific examples of the City of Ocean Springs' failure to comply with public notification requirements and subsequent retaliatory actions taken against him. Plaintiff explicitly requested that the Board uphold their constitutional oaths to ensure transparency and protect free speech in the city.

Plaintiff's comments were measured, factual, and in accordance with his First Amendment rights. Despite this, Alderman Jennifer Burgess immediately followed these comments with public defamatory statements designed to discredit Plaintiff and suppress his journalistic activities.

23. **Public Defamation by Alderman Burgess**

Immediately following Plaintiff's public comments — which underscored his identity as a disabled veteran and his commitment to journalistic accountability — Alderman Jennifer Burgess requested three minutes for a rebuttal. During her comments, Burgess made a series of defamatory statements, including the false claim that Plaintiff had demanded the termination of City Clerk Patty Gaston. She also mischaracterized a prior phone call with Plaintiff, describing it as "unhinged" and claiming she had been "genuinely frightened" and had tried to "talk him off a ledge." Additionally, Burgess falsely asserted that Plaintiff's accusations against Gaston were baseless and that Gaston had not attacked him on social media or threatened him — statements directly contradicted by documented evidence. These comments were intended to publicly discredit Plaintiff and further the city's campaign of retaliation against his journalistic efforts.

In response, Plaintiff briefly interjected to correct inaccuracies, clarifying that he had not demanded Gaston's termination and calling attention to the escalating falsehoods. After she persisted in mischaracterizing their phone call and accused him of threatening behavior, Plaintiff calmly asked, "Is this the hill you want to die on?" — a rhetorical question expressing his disbelief at the escalating falsehoods. When Burgess claimed she was "genuinely frightened" during the phone call, Plaintiff noted that the call had been recorded and offered to publish it to correct her misrepresentations. These responses were measured and necessary to counter the baseless accusations made in a public forum. However, before Plaintiff could fully defend himself, Mayor Kenny Holloway abruptly interrupted, declaring, "This conversation is over," and threatened to have Plaintiff removed if he continued speaking. This shutdown exemplifies the administration's broader efforts to suppress Plaintiff's voice and shield false and defamatory statements from scrutiny.

The recording of the phone call between Plaintiff and Burgess, which Plaintiff lawfully published to defend himself, unequivocally demonstrates that her characterizations were false. Plaintiff remained calm and professional throughout the call, focusing on raising legitimate concerns, and made no statements that could reasonably be perceived as threatening. Burgess's claim that she was "genuinely frightened" was a fabrication, as was her accusation that Plaintiff had demanded Gaston's termination.

These misrepresentations by Burgess were intended to damage Plaintiff's credibility and reputation while deflecting attention from the city's misconduct. Compounding the harm, the video of the Board of Aldermen meeting, including Burgess's defamatory statements, is now part of the permanent public record and available for anyone to view on the city's YouTube channel, further amplifying the harm caused by her actions.

Burgess's defamatory statements were made with the clear intent to retaliate against Plaintiff for exercising his First Amendment rights and to discredit his public comments as a disabled veteran advocating for transparency and free speech. Her remarks were not spontaneous but premeditated,

as evidenced by her subsequent text messages boasting that her comments succeeded in provoking Plaintiff. This calculated conduct demonstrates malice and a deliberate effort to suppress protected speech.

Defendant Burgess has repeatedly used her official Facebook page and other public platforms to accuse Plaintiff of unethical and dishonest behavior. In various comment threads, she has described Plaintiff's journalism as "vendetta-based," accused him of targeting "very ill" women, and referred to him as a "self-professed con man" devoid of integrity. She has also suggested that Plaintiff fabricates narratives, and spends an "irrational amount of time" attacking women. These statements are false, malicious, and part of a sustained campaign of retaliation following Plaintiff's published articles exposing misconduct within city government.

In addition, Burgess has made repeated defamatory accusations about the SaveOS organization, with which she claims Plaintiff is affiliated, asserting that it violates federal nonprofit law and that it has engaged in fraudulent or deceptive activity. These accusations have been made publicly and without evidence, often accompanied by personal attacks on Plaintiff as the "hack writer" behind SaveOS communications. In one exchange, Burgess went so far as to suggest that SaveOS had intentionally frightened elderly residents and cost the city hundreds of thousands of dollars. These accusations have no basis in fact and were designed to damage Plaintiff's reputation and chill his reporting activity by associating him with an organization she erroneously described as criminal.

Burgess made several defamatory statements about Plaintiff during a Board of Alderman meeting. However, **these statements were excluded from the official minutes** of the meeting, despite all other aldermen's remarks being recorded. The video recording of the meeting, available on the City's YouTube channel, clearly shows her statements. The omission from the certified minutes, **signed by the mayor and city clerk**, constitutes a falsification of public records and reflects a deliberate attempt to erase evidence of retaliatory and defamatory conduct.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

24. **Burgess's Admission of Retaliatory Intent and Malice**

In a text message exchange with City Clerk Patty Gaston acquired via a public records request, Alderman Jennifer Burgess revealed her **premeditated** intentions behind her defamatory public response to Plaintiff at the September 17, 2024, Board of Aldermen meeting.

Just after that public meeting Burgess texted to Gaston, "I knew he was going to come after me, and I spoke to him under the assumption I was being recorded (even though he told me he wasn't recording)."

Burgess attempted to portray the Plaintiff as a liar by falsely claiming that Plaintiff had assured her during their phone call that the call was not being recorded — a statement directly disproven by the recording itself, which Plaintiff later published to refute her mischaracterizations.

Burgess went on to text, "**I asked for my 3 minutes so I could get him to show his true colors,**

and I succeeded. I'm good!"

This statement demonstrates Burgess's deliberate motive to provoke and publicly discredit Plaintiff, rather than address his concerns about transparency and retaliatory behavior by city officials.

Burgess wrote, **"He messed up because he threatened me... multiple times."**

This assertion is demonstrably false and is easily disproven by the publicly available video of the meeting on the city's YouTube channel, which shows no evidence of threatening behavior by Plaintiff.

Gaston responded, **"I think maybe when he said he didn't ask you all to fire me that was a screw up too."** Burgess replied, **"Yes, because we have the letter to prove it. I genuinely hope he recorded me because if it comes to it, I will challenge him to prove it and release the recording. It won't come to that."**

Burgess also stated, **"He's still going to try and shine us in a negative light... watch."**

This exchange demonstrates Burgess's intent to provoke Plaintiff, fabricate accusations, and manipulate evidence to deflect accountability. Burgess's admission that she intended to 'get him to show his true colors' underscores her retaliatory motive, while her willingness to lie about the existence of threats reveals bad faith and malice. Furthermore, Gaston's complicity in endorsing and encouraging this behavior reflects a broader culture of retaliation within the city's leadership.

Plaintiff published the phone call the following day, proving Burgess mischaracterized the content of the call during the public forum.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

25. **Alderman Burgess's Escalation at a Subsequent Public Meeting**

Following the September 17, 2024, Board of Aldermen meeting, Plaintiff encountered Burgess at a public zoning meeting held at the Civic Center. During this event, Plaintiff, in his capacity as a journalist, interviewed various residents and officials. When Plaintiff approached Burgess to ask for permission to ask a question, she replied dismissively, "I don't think so." Plaintiff then clarified that he simply wanted to pose a question, which she could decide whether to answer, to which Burgess responded, "I have no interest in what you're writing."

Shortly after this interaction, Burgess sent a text message to Plaintiff's employer, Leigh Coleman, stating:

"I will never respond to any requests for quotes from you or Eric Rosenberg. Any and all questions are to be sent to Ravin as you and he have been advised many times already. I also wanted it noted that I want Eric Rosenberg NO WHERE NEAR ME PHYSICALLY. My personal well being is more important to me, my husband and my son than any embarrassingly

biased hit piece he may be working on."

This inflammatory and baseless message further underscores the retaliatory and defamatory nature of Burgess's conduct. Burgess represents the legislative branch of government. By instructing that all inquiries for her be routed through an official in the executive branch of government, Burgess deliberately obstructed Plaintiff's ability to perform his role as a journalist. Furthermore, her suggestion that Plaintiff posed a physical threat to her and her family is not only false but also consistent with her broader pattern of fabricating claims to discredit Plaintiff's credibility and professional reputation with his employer.

On December 5, 2024, Plaintiff sent an email to Defendant Burgess outlining numerous demonstrably false statements she had made during a public meeting and in text messages obtained through a public records request. Plaintiff's email detailed how these statements mischaracterized his actions, misrepresented his interactions with city officials, and harmed his professional reputation. Plaintiff requested a public correction and an explanation for these inaccuracies. Defendant Burgess failed to respond, allowing the false statements to remain uncorrected and publicly accessible.

On or around March 15, 2025, Defendant Burgess posted a public comment on Mayor Holloway's Facebook page under her official name and title, stating: "I only fought back when he started getting my people upset because of his vendetta based 'journalism'… I don't dignify anything he writes." This admission, made in her official capacity, demonstrates retaliatory motive directly tied to the Plaintiff's protected speech and further supports Plaintiff's Monell claim and defamation claim.

### 26. Directive Not to Communicate with Plaintiff

During the phone call with Plaintiff in response to his plea for help from the Board of Alderman, Alderman Jennifer Burgess admitted that she had been advised by city officials not to speak with Plaintiff after he asked for help in a letter. Burgess stated, "I was advised not to speak to you. I was absolutely advised not to speak to you, and I went against that advice."

This statement demonstrates a coordinated effort by city officials to isolate Plaintiff and prevent him from engaging with members of the city government, even when asking for their assistance in constitutional retaliation issues he is suffering from. Such directives further reflect a de facto policy of suppressing Plaintiff's First Amendment rights and retaliating against his journalistic activities.

### 27. Retaliation via Cutoff of Communication Following Article

On or around January 26, 2025, Plaintiff published an article that quoted city officials accurately and in context. In response, City Clerk Patty Gaston posted a public Facebook comment under the article stating that, because of the publication, she would no longer respond to Plaintiff's questions. Gaston wrote: "From now on don't ask me any more questions as I will not respond to you any further." She criticized Plaintiff's reporting as having a "negative spin" and blamed him and others for "running off employees" and making it harder for the City to "retain or hire" staff. Gaston's statement was not a personal opinion in a private setting — it was a public declaration,

made in her official capacity, that she would no longer provide information to a journalist based on his viewpoint.

Within days of that post, Plaintiff discovered that he had been removed from the City's media notification list. He was reinstated only after submitting a formal request to Deputy City Clerk Vicky Hupe in February 2025. In that request, Plaintiff asked for a specific explanation for his removal, writing: "Understanding the reason for my removal is important to ensure that this does not happen again." The City never responded.

Although Gaston later resumed responding to some media inquiries, her responses to Plaintiff remained spotty, selective, and inconsistent. On multiple occasions, she ignored questions entirely or referred Plaintiff to other individuals — including staff who had yet to take office: The pattern of delayed or denied responses reflected an ongoing effort to obstruct Plaintiff's reporting and deny him equal access to public information.

28. **Mayor Kenny Holloway "Disappointed" Plaintiff was Not Fired**

Mayor Kenny Holloway played a significant role in the campaign of retaliation against Plaintiff. After Plaintiff published factual articles critical of city practices, Mayor Holloway sent a text message to Plaintiff's employer, Leigh Coleman, suggesting Plaintiff "got the story wrong." Again, he contacted Plaintiff's boss after Plaintiff published the article about the city notifications, telling Coleman that Plaintiff "needs to get both sides of the story" before writing "editorials" — despite Plaintiff having attended the meetings and reported both sides objectively.

Mayor Holloway later escalated his actions by making multiple calls to Leigh, including one where he referenced a Facebook post containing disparaging claims about Plaintiff. Instead of condemning the post or addressing its inaccuracy, Mayor Holloway used it as a pretext to further question Plaintiff's integrity, contributing to the pattern of retaliatory behavior by city officials.

The next day, following a public meeting that Plaintiff attended in his capacity as a journalist, Mayor Holloway called Plaintiff's employer again to express his "surprise and disappointment" that Plaintiff was still on staff. These actions demonstrate a clear attempt by Mayor Holloway to undermine Plaintiff's professional standing, intimidate him into ceasing his critical reporting, and pressure his employer into terminating his employment.

Holloway sent several messages to Plaintiff's former employer calling his work "yellow journalism," and recommending he be terminated. On or around December 26, 2024, his assistant sent an email to Plaintiff's employer titled, "Status of E. Brian Rose at the Ocean Springs Weekly Record," and included: "Is E. Brian Rose still on staff at the Ocean Springs Weekly Record?" Holloway was CC'd in the email.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

29. **Mayor Holloway's Public Attack on Plaintiff's Journalism**

On March 15, 2025, Mayor Kenny Holloway published a public statement on his official "Mayor

Kenny Holloway" Facebook page attacking Plaintiff and his publication GC Wire. In the post, Holloway falsely claimed that Plaintiff and the community group SaveOS had "repeatedly misrepresented facts, twisted narratives, and used bad-faith tactics to undermine fair discussion." He further stated that their involvement had turned a nonpartisan candidate forum into a "staged ambush designed to mislead voters."

This statement was made in response to a community-wide candidate forum hosted by the Ocean Springs Weekly Record in partnership with the Lions Club and Chamber of Commerce. Plaintiff was one of many community members invited to participate in a limited ceremonial capacity. Specifically, Plaintiff was asked to lead the audience in the Pledge of Allegiance and to introduce the forum's moderator, a former television news host.

Despite Plaintiff's minimal role, Holloway used the event as a pretext to publicly discredit GC Wire and retaliate against Plaintiff's prior reporting. By accusing Plaintiff of undermining democratic discourse and participating in a "staged ambush," Holloway made false statements that were calculated to damage Plaintiff's professional standing. These remarks were published under the mayor's official title and followed a broader pattern of retaliation by city officials.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

30. **Alderman Impey's Public Accusation and False Attribution of Bias**

On March 15, 2025, Alderman Mike Impey published a statement on his official Facebook account falsely accusing Plaintiff of turning a nonpartisan candidate forum into an anti-incumbent event. Impey wrote that the event, originally hosted by the Ocean Springs Weekly Record in partnership with the Lions Club and Chamber of Commerce, had "turned into an event run by the SaveOS organization and E. Brian Rose." He further claimed that both "have shown a bias against most of those currently serving in office" and suggested that Plaintiff was responsible for organizing a "staged ambush."

In reality, Plaintiff was not involved in organizing the event. His role was limited to a community think tank for question submissions, ceremonial introduction, and recitation of the Pledge of Allegiance. At no point did Plaintiff have editorial control over the content, structure, or sponsorship of the forum. Impey's statements were false, defamatory, and made with reckless disregard for the truth.

By publishing this post while holding elected office, Impey used the authority and visibility of his public position to further retaliate against Plaintiff for constitutionally protected journalistic activity. His comments aligned with a broader narrative being promoted by city officials that day, including Mayor Holloway and others, forming part of a coordinated retaliatory effort.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

31. **Unconstitutional Suppression of Plaintiff's Public Comment by Alderman Ken Papania**

On May 20, 2025, during the public comment portion of a regular Ocean Springs Board of Aldermen meeting, Plaintiff sought to speak in response to comments made moments earlier by former Police Chief Mark Dunston. Dunston had addressed the Board directly and made statements concerning Plaintiff's journalism and reporting on the city's contract with the controversial traffic enforcement company, Securix.

Plaintiff, a journalist and resident, began his comments by quoting directly from an email exchange with former Chief Mark Dunston, who had acknowledged that while serving in an official capacity, he contracted with Securix to promote their program to other municipalities. Plaintiff had previously reported on this conflict of interest.

As Plaintiff began reading from this publicly sourced material, Alderman Ken Papania repeatedly interrupted, stating, "Don't come up here and slander another man." Despite Plaintiff calmly explaining that he was reading from official correspondence and that the topic directly involved city contracts, Papania declared, "This is not city business," and said, "You're not getting your time back."

Papania's effort to silence Plaintiff while applauding or permitting others to speak on the same topic clearly demonstrated content- and viewpoint-based discrimination. This incident occurred during a designated public forum and was executed under color of law in violation of Plaintiff's constitutional rights.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

32. **Defamatory Public Statements By City-Appointed Officials**

In early June 2025, shortly after Plaintiff published a warning on social media about unmarked audio surveillance at City Hall, several individuals closely tied to Ocean Springs government responded with coordinated public attacks. Bonnie Munro, President of the Historic Preservation Commission, and Kenny Williams, a member of the Ocean Springs Redevelopment Authority (RDA), posted and endorsed defamatory statements targeting Plaintiff in a Facebook thread on Mike Davis's public post.

In that thread, Munro publicly claimed Plaintiff is "extremely insecure," has a "temper," and "doesn't have the confidence to withstand too much integration beyond a gentle ego stroke." She further stated that Plaintiff "will now be biting the hand that feeds him" and encouraged readers to "get your popcorn," indicating a desire to witness Plaintiff's public humiliation. Williams replied in agreement, calling Plaintiff a "doofus" and stating, "He is also a tool. Sorry..."

Elsewhere in the thread, Williams wrote: **"They lie. Joe, Ellen, Julia, EBR. They just lie. They hate business. Which means they hate people."** This defamatory remark falsely accused Plaintiff of dishonesty and hatred of the public. "EBR" are the initials of the Plaintiff.

In one exchange, Munro stated that Plaintiff **"thinks he is untouchable. But everyone can be touched and it's usually by someone you would never think.**" The comment was clearly threatening towards the Plaintiff in direct relation to his constitutionally protected journalism.

Plaintiff sent an official letter to the Ocean Springs Board of Aldermen to formally notify them of these defamatory statements made by city-appointed officials. Despite this, the Board took no corrective or disciplinary action. Neither Munro nor Williams retracted or apologized for their remarks, and both continue to serve in their appointed public roles. Their official affiliations with city boards add weight and legitimacy to their false and malicious statements in the public eye.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

33. **Pressure Campaign from City Attorney Led to Job Loss**

Beginning in late December 2024 and continuing into early 2025, Plaintiff's then-editor and publisher, Leigh Coleman of the Ocean Springs Weekly Record, began receiving multiple cease and desist letters from attorneys representing Defendant Robert Wilkinson and his private business interests. These ventures included traffic enforcement programs such as Securix and Intellisafe, which often operated in legal gray areas where Wilkinson's public and private roles appeared to conflict.

The letters accused the publication of defamation and threatened legal action in response to articles written by Plaintiff that exposed conflicts of interest, misuse of public funds, and bypassing of due process protections. The pressure campaign was not limited to legal threats; Coleman also reported receiving direct and indirect messages from city officials expressing disapproval of the paper's reporting and demanding changes to its editorial stance.

Under the weight of mounting legal threats and the financial burden of potential litigation, Coleman informed Plaintiff that she could no longer afford to defend the paper from lawsuits. She explained that the city's coordinated campaign—including the threats from Wilkinson's legal teams — had forced her to terminate Plaintiff's working relationship with the paper. This indirect but intentional retaliation was designed to suppress Plaintiff's reporting and punish him for exercising his First Amendment rights.

In or around May 2025, while Plaintiff was writing for his own publication, Wilkinson sent a text message to Ms. Coleman stating, "**He is falling right into our trap**," in reference to Plaintiff's reporting on the Securix programs Wilkinson and the City were and are involved in. The message was part of a broader thread in which Wilkinson attempted to reassure Coleman that Plaintiff's work would be discredited. This text message — sent directly from Wilkinson — shows further evidences the existence of a coordinated effort to undermine Plaintiff's credibility, suggesting **malicious intent** and forethought behind the campaign of retaliation. During a telephone call to Coleman, she asked Wilkinson to contact Plaintiff to share his side, to which Wilkinson replied, "Nobody is calling Brian."

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

34. **Bonnie Munro Admits Others Should be Named in Lawsuit**

On or around June 8, 2025, Bonnie Munro, Chair of the Ocean Springs Historic Preservation Commission, sent a text message to journalist Leigh Coleman in response to being named in this lawsuit. Rather than deny any involvement or wrongdoing, Munro stated: "I don't know what his deal is with me. I don't even know him. **There are so many other people he could have included that would have made more sense.**" This message, sent privately and voluntarily, reflects a tacit acknowledgment that other city officials engaged in conduct more egregious than her own — and that such conduct was widely known. Munro's admission reinforces that Plaintiff's claims are not fabricated or speculative, but rather a selective snapshot of broader misconduct within City Hall.

Her statement supports Plaintiff's Monell claim by demonstrating that unconstitutional behavior was pervasive, normalized, and implicitly tolerated by municipal leadership.

35. **Carter Thompson's False Allegations and Subsequent Contradiction**

Carter Thompson, the city's former Community Development Director, became part of the city's pattern of retaliatory conduct against Plaintiff, despite his initial professional and courteous approach. Prior to ever mentioning Ms. Thompson in any articles, Plaintiff reached out to her by phone to request an interview for a profile piece introducing her to the community. Ms. Thompson repeatedly declined, stating, "I don't do interviews." Plaintiff accepted this response and moved on without issue.

However, in a text message later obtained through a public records request, Ms. Thompson falsely claimed to City Clerk Patty Gaston that after the phone call, Plaintiff had barged into her office demanding an interview and had to be intercepted by a colleague. She wrote, "**He came in and wanted to do interview with me right then and there and thank God Hannah caught him at the [door].**" This fabricated narrative portrays Plaintiff as aggressive and unprofessional, despite the fact that Plaintiff has never visited Ms. Thompson's office. This statement aligns with the city's broader strategy to paint Plaintiff as irrational and untrustworthy in retaliation for his factual reporting.

On December 9, 2024, Plaintiff attended a public meeting at the Civic Center hosted by Defendant Carter Thompson and her staff, including "Hannah." During the meeting, Plaintiff introduced himself to Hannah for the first time and stated, "Nice to finally meet you; I can't believe we haven't met before." Hannah responded, "No, we have never met before, nice to finally meet you."

This interaction directly contradicts Defendant Thompson's previous allegation that Plaintiff barged into her office, where Hannah allegedly intercepted him at the door. The conversation, recorded by Plaintiff, unequivocally disproves Thompson's claim, further demonstrating that her statements were fabricated in bad faith as part of the retaliatory actions against Plaintiff.

On December 5, 2024, Plaintiff sent an email to Defendant Thompson addressing her demonstrably false statement in a text message to the City Clerk, which inaccurately alleged that Plaintiff had attempted to enter her office and conduct an unscheduled interview after she told him she doesn't do interviews. Despite being given the opportunity to clarify or correct this statement, Defendant Thompson failed to respond. Her refusal to engage demonstrates a disregard

for the truth and the impact of her actions on Plaintiff's professional reputation.

Mayor Holloway, on a recorded call with Leigh Coleman, stated he knew that Carter Thompson made up the story of the Plaintiff barging into the office. "She lied about Brian going up into that office. He never went up in that office." However, Holloway still used the lie when it suited him. Holloway used the fake accusation as justification to convince Thompson to have cameras installed in Thompson's workspace. "You had Brian Rose come and barge in, you know, and people coming in there," the mayor said to Thompson in a recorded conversation. "You were all upset about that. So you know we got to have some protection up there."

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

36. **City Clerk Gaston's Knowledge of Smear Campaign**

In January 2025, after Plaintiff's professional relationship with the Ocean Springs Weekly Record was terminated under pressure from city officials, Plaintiff received a screenshot of a text message sent by City Clerk Patty Gaston to the newspaper's editor, Leigh Coleman. The message revealed that Carter Thompson, the city's Community Development Director, had devised a smear campaign against Plaintiff involving the creation of a defamatory website. Gaston wrote:

"Please don't tell Brian but she hates him so much she told me around a month ago that she found a hacker that would set up a website on him for $200. That is how evil she is."

Gaston sent this message weeks before Plaintiff was made aware of the plot. Despite knowing about the planned harassment by a fellow city employee, Gaston took no action to stop it, warn Plaintiff, or report it through proper channels. This failure to intervene demonstrates not only complicity but also a deliberate choice to withhold information that could have protected Plaintiff from reputational harm and emotional trauma.

Gaston's knowledge of this malicious plan — and her decision to keep it secret for a month — reflects a broader pattern of retaliation, bad faith, and emotional cruelty toward Plaintiff by city leadership. The fact that she shared this information only with Plaintiff's former-employer further suggests an attempt to undermine Plaintiff's standing behind the scenes while maintaining public deniability.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

37. **False Statements by Police Chief Ryan Lemaire at Board of Aldermen Meeting**

On December 17, 2024, during a Board of Aldermen meeting, Chief of Police Ryan Lemaire publicly accused Plaintiff of spreading misinformation regarding the city's purchase of a vehicle tracking system. He falsely stated that **Plaintiff's reporting was "100% not true"** and that the system included only pan, tilt, zoom cameras, despite official records documenting the AI capabilities of the system, as reported by Plaintiff. Lemaire later repeated these false claims during an interview with WLOX in a report, further damaging Plaintiff's credibility. Furthermore,

Lemaire claimed Plaintiff lied when he wrote an article stating the expenditure for this operating system was hidden in the meeting's consent agenda and voted on without public notification or debate. It demonstrably was tucked into the consent agenda.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

38. **Securix Scandal**

Between December 20, 2024 and January 5, 2025, Plaintiff published a series of investigative articles exposing financial ties between City Attorney Robert Wilkinson, former Police Chief Mark Dunston, and Securix. These articles detailed how Wilkinson and Dunston profited personally from a contract with Securix to install a controversial camera system. Despite their accuracy, the articles prompted retraction demands, threats of legal action, and harassment from Wilkinson's business partner, Josh Gregory, who sent multiple threatening emails and made intimidating calls to Plaintiff and his editor. Numerous letters to Plaintiff's employer were received from law firms representing City Attorney Wilkinson and his business interests.

39. **Failure to Investigate Plaintiff's Formal Complaint**

On or around September 16, 2024, Plaintiff filed a formal complaint with the Ocean Springs Human Resources Department regarding the retaliatory and defamatory actions of City Clerk Patty Gaston, as detailed in this Complaint. On September 19, 2024, after receiving no response, Plaintiff sent a follow-up email to confirm receipt of the complaint. That same day, Human Resources Director Mindy McDowell responded, stating, "We have received your complaint regarding the actions of City Clerk Patty Gaston, and we will be reviewing and investigating the situation." Despite this acknowledgment, Plaintiff has received no further communication from the Human Resources Department regarding the status or outcome of the investigation, despite several emails asking for an update. A subsequent public records request resulted in the City denying Plaintiff access to updates.

This lack of follow-up, combined with no follow-ups to Plaintiff's letters to Aldermen on the same matter, demonstrates the City's failure to take Plaintiff's concerns seriously and reflects a broader pattern of inaction and indifference toward misconduct by city officials.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

40. **Unlawful Secret Audio Surveillance Inside City Hall**

In early 2025, Plaintiff discovered that the City of Ocean Springs had been secretly recording audio of conversations in public areas of City Hall, including the hallway outside the Board of Aldermen meeting room—a space where journalists, city staff, and residents frequently gather to speak before and after meetings. No signage or notice was posted to alert the public that audio surveillance was in effect.

Plaintiff had numerous personal and professional conversations in that hallway, including

confidential phone calls and discussions with sources, and reasonably expected those conversations to remain private. The city never disclosed this surveillance policy until Plaintiff exposed the practice in a published article.

Following the article's publication, City officials confirmed the existence of the recording system and admitted in writing that no policies governed who could access the recordings, no logs were kept, and that the surveillance system had been in place since at least October 2021. Mayor Kenny Holloway stated that signage would be ordered to warn the public, but a whistleblower from the Public Works Department later informed Plaintiff that no such sign had been ordered, contradicting the mayor's public claims.

Whistleblowers further confirmed that officials routinely accessed and reviewed audio recordings after public meetings. On June 2, 2025, Plaintiff sent a direct email to City Clerk Patty Gaston seeking clarification:

*"In light of recent confirmation that unmarked audio surveillance devices have been active inside Ocean Springs City Hall, I am requesting a straightforward answer to the following: Have you ever personally viewed or listened to any audio or video recordings made by these devices? If so, how approximately many times? Also, do you know of other employees or officials who have accessed the recordings? If so, who are they?"*

Gaston did not respond. Her silence in the face of this serious constitutional concern — especially after insiders alleged misuse — underscores the City's deliberate indifference to the rights of journalists and citizens. The lack of any written policy, oversight, or signage further demonstrates that the City maintained and used this surveillance system in a manner that violated clearly established constitutional rights. These practices had a chilling effect on Plaintiff's journalistic activity and personal privacy, confirming yet another form of retaliation and misconduct by the City of Ocean Springs.

These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

41. **Stonewalling Public Records Requests**

On or around September 24, 2024, Plaintiff submitted a public records request to the City of Ocean Springs seeking all emails and text messages sent or received by city officials that referenced Plaintiff or his work as a journalist, including communications on both city-owned and personal devices as permitted under the Mississippi Public Records Act (MPRA). The City Clerk stated that fulfilling the request would likely cost hundreds of dollars and required Plaintiff to pay a fee merely to obtain an estimate of the total cost. To avoid these unreasonable financial barriers designed to deter transparency, Plaintiff agreed to limit his request to text messages only.

On or around October 1, 2024, City Clerk Patty Gaston informed Plaintiff that the city had identified records responsive to his request and provided a cost estimate for the production of text messages. However, when Plaintiff received the records on December 5, 2024, it became evident

that the response was incomplete:

- The records included text messages from Defendant Gaston's phone but omitted corresponding messages from other city officials, including Alderman Jennifer Burgess and Community Development Director Carter Thompson, with whom Gaston had texted back and forth.

- After Plaintiff sent a follow-up email raising attention to missing information, Gaston admitted the city forgot to include a text message written by the mayor, which she attached to the email. Gaston further admitted in email correspondence that she lost her phone, potentially resulting in the loss of additional responsive records, and acknowledged that she had not verified whether all officials conducted thorough searches of their devices.

Despite Defendant Gaston's assertion that most officials claimed they had no responsive text messages, Plaintiff has further direct evidence to the contrary:

- Plaintiff received a screenshot from an Ocean Springs resident showing a text exchange with Alderman Jennifer Burgess, dated within the scope of the request, in which both parties referenced Plaintiff by name. This exchange was within the scope of Plaintiff's request but was not included in the records provided by the city.

- Plaintiff is also aware of multiple instances in which the editor of the Ocean Springs Weekly Record, Leigh Coleman, sent links to Plaintiff's articles to city officials via text message and received responses. These text exchanges were not disclosed, despite being directly responsive to Plaintiff's request.

Plaintiff repeatedly raised these discrepancies with Defendant Gaston via email, requesting clarification and assurances of compliance. In response, Defendant Gaston admitted that:

- Text messages were retrieved from her phone but not from the devices of other officials.

- She lacked the authority to ensure that all officials conducted thorough searches or preserved records, particularly on personal devices.

- Officials' phones may have been wiped or records deleted during the time the request was pending.

- Gaston further disclosed that her own phone, containing relevant records, had been lost.

- She referred the matter to the city attorney, yet the city attorney did not follow up with Plaintiff regarding this issue.

Defendant Gaston's admissions, coupled with the missing records that Plaintiff knows to exist, highlight a troubling pattern of non-compliance with the MPRA and suggest either gross negligence or intentional concealment of public records by city officials.

In a staff meeting that was secretly recorded by Carter Thompson, Mayor Holloway and another city employee both stated Gaston losing her phone was "**the best thing that could have happened.**"

The City's incomplete and misleading responses to Plaintiff's public records request are part of a broader pattern of retaliatory conduct aimed at obstructing Plaintiff's journalistic activities. By withholding records that reference Plaintiff or his work, city officials sought to suppress reporting on their actions and avoid accountability.

The failure to produce text messages and emails that Plaintiff independently verified as existing demonstrates bad faith in fulfilling statutory obligations under the Mississippi Public Records Act. Gaston's admission that her phone was lost and that she could not ensure compliance from other officials further illustrates gross negligence or deliberate concealment. These omissions were intended to frustrate Plaintiff's ability to expose city misconduct, violating both state law and constitutional principles of transparency.

On several occasions, Plaintiff was denied public records and proceeded to file an official appeal. Several of those appeals went unanswered by city officials. These actions, taken by or in coordination with public officials and employees, were part of an ongoing pattern of retaliation that supports Plaintiff's Monell claim under 42 U.S.C. § 1983.

42. **Alderman Disavows Representation of Plaintiff Because He Exercised His Rights**

On or about June 8, 2025, Plaintiff, a resident of Ward 1, publicly asked Alderman Jennifer Burgess for a copy of a city work order spreadsheet she had referenced and offered to other residents on her official "Alderman Ward 1" Facebook page. In response, Alderman Burgess posted a public comment stating:

"E Brian Rose for clarification, because you have threatened to sue me, I have been advised not to respond to you... Any and all questions from you are to go through city hall. I would respectfully request (again) that you please leave me alone."

This exchange occurred on her official city account and followed a pattern of Burgess making similar disavowals in her official capacity. Notably, in the same thread, Burgess assured another Ward 1 resident that she would "always" be available to respond and assist him directly. Her public refusal to engage with Plaintiff — a constituent — and her demand that he "leave [her] alone" clearly demonstrate that she disavowed her duties as Plaintiff's elected representative solely because he had engaged in protected speech, including criticism of city officials and the filing of a mandatory notice of claim under state law.

By conditioning constituent services on viewpoint conformity, and excluding Plaintiff based on his journalism and protected legal activity, Burgess furthered the City's unconstitutional policy of retaliation. Her actions punished Plaintiff for exercising his rights and obstructed access to his duly elected representative. This conduct is particularly egregious given that Burgess holds a legislative office charged with serving all residents of her ward, regardless of political or legal disagreement.

43. **Official Endorsement of Anti-Speech Sentiment by Final Policymaker**

On or about September 23, 2024, Mayor Kenny Holloway, acting in his official capacity as final policymaker for the City of Ocean Springs, authored and published an editorial in the *Ocean Springs Weekly Record* entitled "From the Desk of the Mayor." In this piece, the Mayor publicly characterized online political criticism as "spewing hate," labeled citizen questions as "suspicion or doubt," and asserted that residents should "step back from the keyboard" rather than continue to express dissent. He further stated that the spread of "misinformation" was "killing the charm of our small town," without defining the term.

Although couched as a call for civility, the editorial explicitly discouraged political discourse, framed dissent as harmful, and praised those who expressed only positive messages. This publication served as an official ratification of the City's broader practice of discrediting and retaliating against critics, particularly journalists and residents who challenge municipal decisions, and is consistent with the pattern of conduct described throughout this Complaint. The editorial reinforced a municipal custom of discouraging protected speech and created a chilling effect on those seeking to engage in public discourse about matters of governmental concern.

44. **Causation for Retaliation**

The sequence of events demonstrates a direct and unequivocal causal link between Plaintiff's constitutionally protected reporting on matters of public concern and the retaliatory actions taken by the Defendants, each of whom acted in direct response to Plaintiff's publications. Plaintiff's critical articles addressed specific failures by the City of Ocean Springs, such as noncompliance with legal notification requirements for zoning changes and the hiring of Community Development Director Carter Thompson despite her documented professional controversies. These articles were factually accurate, essential for public awareness, and well within the bounds of protected speech.

Within days of their publication, Defendants initiated a pattern of retaliatory actions, including derogatory communications, fabricated allegations, and efforts to interfere with Plaintiff's employment, all aimed at silencing and discrediting him. In many instances, like the phone call from Burgess to the Plaintiff and text messages from Gaston and the mayor to Plaintiff's employer, the Plaintiff's articles were directly mentioned. The close temporal proximity and targeted nature of Defendants' responses confirm their intent to retaliate against Plaintiff for his reporting.

The timing and nature of Defendants' actions underscore this causation. Shortly after the publication of Plaintiff's articles:

- **City Clerk Patty Gaston** sent derogatory text messages to Plaintiff's employer, referring to him as "a piece of shit" and threatening to reveal damaging personal information. Gaston also publicly disparaged Plaintiff's articles as "misleading" without providing any factual basis, attempting to discredit his work in retaliation for his reporting.

- **Alderman Jennifer Burgess** directly targeted Plaintiff in response to his reporting. On September 14, 2024, Burgess contacted Plaintiff to chastise him for exercising his First

Amendment rights, stating, "Just because you have the right to report certain things doesn't mean you should." She specifically criticized Plaintiff's inclusion of factual information about the hiring of Carter Thompson, calling it "unfortunate" that the First Amendment protects such reporting. Describing Plaintiff's writing as "unkind," Burgess sought to undermine his credibility.

Immediately following this phone conversation, Burgess called Plaintiff's employer, describing him as "bad news" and suggesting reconsideration of his employment — a deliberate attempt to interfere with Plaintiff's career in retaliation for his reporting. Additionally, in a text message to City Clerk Gaston, Burgess admitted to intentionally provoking Plaintiff during a public meeting to "get him to show his true colors," later exclaiming, "I'm good!" when she believed her provocation had succeeded. Burgess also falsely claimed Plaintiff had "threatened" her "multiple times" during the meeting, as proven false by the City's own video recording of the event.

The retaliatory intent and coordinated effort to discredit Plaintiff are further evidenced by text messages between Alderman Burgess and City Clerk Gaston. For example, Burgess stated, "He's still going to try and shine us in a negative light… watch," further illustrating her intent to suppress Plaintiff's reporting and preemptively dismiss any legitimate criticism.

Gaston's response, "I think maybe when he said he didn't ask you all to fire me that was a screw up too," and Burgess's agreement, "Yes, because we have the letter to prove it," reveal a shared effort to misrepresent Plaintiff's actions and statements. This exchange demonstrates their willingness to manipulate facts to fit a narrative that discredits Plaintiff and justifies their retaliatory behavior.

- **Mayor Kenny Holloway**, in his official capacity, contacted the owner of *The Ocean Springs Record* multiple times, expressing dissatisfaction with Plaintiff's articles. Following these complaints, Holloway made phone calls to Plaintiff's employer, expressing "disappointment" and "surprise" that Plaintiff remained employed and referencing negative social media commentary about Plaintiff. These actions abused Holloway's authority and were clearly intended to retaliate against Plaintiff for exercising his constitutionally protected rights.

- **City officials, including Community Development Director Carter Thompson,** fabricated a false account of an interaction with Plaintiff, alleging after a phone call where she declined an interview, Plaintiff barged into her office to demand an interview "right then and there" and had to be intercepted at the door by a colleague — an assertion disproven by Plaintiff's recordings. Thompson's fabrication was intended to discredit Plaintiff and diminish his credibility as a journalist.

The actions of Gaston, Holloway, Burgess, Thompson, and other officials form a broader pattern of retaliatory conduct by the City of Ocean Springs. Each retaliatory act arose directly and solely in response to Plaintiff's articles, demonstrating Defendants' intent to silence and discredit Plaintiff for exercising his First Amendment rights.

The retaliatory conduct occurred within a close temporal proximity to Plaintiff's reporting, creating a strong inference of retaliatory motive. For instance, within hours of Plaintiff's article on zoning changes, City Clerk Patty Gaston sent derogatory messages to Plaintiff's employer, and Mayor Kenny Holloway contacted the employer multiple times. Such temporal proximity and targeted conduct establish "but-for causation" as required by Hartman v. Moore and demonstrate that Defendants' animus toward Plaintiff's reporting was the driving force behind the retaliation.

The coordinated efforts of Burgess, Gaston, and Holloway to defame Plaintiff, obstruct public records, and contact his employer demonstrate a pattern of retaliatory conduct that transcends isolated incidents. Burgess's text, **"He's still going to try and shine us in a negative light... watch,"** reflects the collective intent of city officials to discredit Plaintiff and suppress his reporting. This pattern confirms that retaliation was not incidental but systemic and deliberate, targeting Plaintiff for exercising his constitutional rights.

Several public defamatory posts and comments made by City officials specifically referenced his constitutionally protected writing as the reason for their comments.

Plaintiff had **no prior relationship or interaction with most Defendants before publishing his articles.** Plaintiff's reporting marked his first professional engagement with these individuals, eliminating any possibility of pre-existing bias or personal animosity. The retaliatory actions taken by Defendants were clearly motivated solely by the content of Plaintiff's articles, which criticized their official conduct and raised issues of public concern. This timeline establishes that Defendants' responses were a direct reaction to Plaintiff's exercise of his First Amendment rights as a journalist.

45. **Retraction Letter from Firm Representing Robert Wilkinson's Interests**

In May 2025, following publication of an article detailing the City of Ocean Springs' involvement in the Securix ticketing scheme, as well as ties of local and state actors to another ticketing scheme called Intellisafe, Plaintiff received a multi-page retraction demand letter from the law firm representing Intellisafe. City Attorney Robert Wilkinson is the only listed member/owner of Intellisafe in sate filings. The letter was issued on behalf of the company in response to Plaintiff's reporting, which accurately detailed matters of public concern including the City's contracts, enforcement practices, and conflicts of interest involving City Attorney Robert Wilkinson. Despite being sent under Intellisafe's name, the demand letter was clearly intended to suppress protected speech about Wilkinson's dual role in public office and private ventures. This act is consistent with a broader campaign of retaliation against the Plaintiff by Wilkinson and others acting under color of law.

46. **Wilkinson's False Safety Complaint to Law Enforcement**

In May 2025, Defendant Wilkinson escalated his campaign of retaliation by falsely portraying Plaintiff as a violent threat to law enforcement. According to Plaintiff's former employer, Leigh Coleman, Wilkinson told her that he contacted Ocean Springs Police Chief Steven Dye and alleged that Plaintiff posed a threat to his family's personal safety. These claims were made after Plaintiff published articles critical of the City and Wilkinson's conduct. Coleman relayed that she

spoke with both Wilkinson and Dye to confirm and that Wilkinson told Dye Plaintiff had a "brain problem" and was violent.

Plaintiff immediately and professionally contacted Chief Dye to clarify any concerns. In a written email dated May 9, 2025, Plaintiff stated:

"I was recently informed that Robert Wilkinson or his wife may have spoken with you regarding safety concerns they had following one of my recent articles. I want to clarify that I have never had any unprofessional or threatening interactions with any city official. Are there any concerns on your end that I can address for you on this matter?"

Chief Dye replied in writing, "No problems at all. Have a good day."

This brief but clear exchange confirms that Plaintiff posed no threat, and that Wilkinson's statements were knowingly false, made with malicious intent, and intended to portray Plaintiff as mentally unstable and dangerous in order to discredit his journalism. These actions support Plaintiff's claims of First Amendment retaliation, defamation per se, and intentional infliction of emotional distress. They also serve as further evidence of a broader policy, pattern, or custom of retaliatory conduct against critics and journalists by Ocean Springs officials.

47. **Wilkinson's False and Retaliatory Statements to the Mississippi Bar**

In April 2025, Defendant Wilkinson submitted a written response to a disciplinary complaint before the Mississippi Bar in which he made multiple false and misleading statements about Plaintiff. In that document, Wilkinson falsely claimed that Plaintiff had omitted Wilkinson's denial of compensation in a published article. In truth, the Plaintiff's article included Wilkinson's quoted denial verbatim.

Wilkinson also falsely suggested that Plaintiff was not a legitimate journalist and characterized the article as a "deliberately misleading" attack piece intended to support a complaint — statements made with knowledge of their falsity. These defamatory and retaliatory mischaracterizations, submitted under color of law in an official capacity, are further evidence of the City's policy and practice of discrediting Plaintiff's constitutionally protected speech through knowingly false statements.

48. **Misrepresentation of Legal Correspondence and Alteration of Meeting Minutes**

In December, 2024, Plaintiff submitted a formal letter of intent to file suit against the City of Ocean Springs. During a later public Board of Aldermen meeting, City Attorney Will Norman mischaracterized the letter on the record, suggesting that the basis of my impending lawsuit was about political background checks, not the Constitutional and state issues stated in the letter. He also stated that I was singling out Patty Gaston, making the public think the entire lawsuit was against her only.

The official minutes of the meeting representing this false description. Plaintiff raised objections

to this misrepresentation at a future meeting, and the Board later amended the meeting minutes. The alteration of public records to correct a public official's false statement demonstrates both the harm of that falsehood and the City's pattern of misusing public forums to discredit Plaintiff's lawful exercise of his rights.

49. **Falsification of Official Actions and Bad-Faith Settlement Conduct**

In or around March and again in April 2025, Plaintiff submitted a formal written request for a meeting with the Mayor and City Attorney to discuss potential resolution of ongoing constitutional concerns. In response, Attorney Will Norman sent an email to Plaintiff stating that the Board and Mayor had met in executive session and voted to deny the meeting request. This representation was false. The official minutes of the executive session reflect no such vote or action, and Alderman Bobby Cox personally confirmed to Plaintiff that no vote occurred and no discussion was held on the matter.

In that same email, Norman solicited a written settlement offer from Plaintiff. Acting in good faith, Plaintiff promptly submitted a formal offer. However, Alderman Cox later confirmed that Norman never presented the settlement offer to the Board of Aldermen for consideration. The City Attorney did not present the offer to the Board of Aldermen, took no official action on the offer, and never responded. This sequence of events demonstrates not only bad faith by the City Attorney's office, but also a coordinated effort to create a false appearance of due process while deliberately suppressing a legitimate attempt at resolution.

Plaintiff also notified the City that, under the Mississippi Open Meetings Act, any final action taken in executive session must be publicly recorded in the minutes. The City failed to correct the record or disclose any official action. This fabrication and concealment of public business support Plaintiff's Monell claim by demonstrating a broader pattern of retaliatory misconduct, deception, and denial of access to redress.

50. **Subsequent Government Action Confirms Plaintiff's Reporting Was Accurate and Effective**

City officials repeatedly attacked Plaintiff's journalism as biased, unprofessional, or untrue. Yet, their own actions tell a different story. In the wake of multiple published articles, Ocean Springs leadership made significant policy changes that aligned directly with the issues exposed by Plaintiff. These changes not only demonstrate the factual accuracy of Plaintiff's reporting, but also provide further evidence that the retaliatory conduct was motivated by a desire to suppress truthful speech rather than correct falsehoods and/or wrongdoings. Examples include:

A. After Plaintiff exposed years of secret audio surveillance at City Hall, the Mayor publicly announced new signage would be installed, remedying years of nondisclosure to residents.
B. Plaintiff's reporting on the City Attorney's undisclosed conflict of interest in the Securix program led to a Board vote to replace him, citing the very issues Plaintiff uncovered.
C. Articles about environmental concerns regarding the Leica property and adjacent daycare prompted the City to contact Leica and state officials for updated testing.
D. Plaintiff revealed an unconstitutional policy requiring candidates to submit personal information and undergo background checks; the policy was rescinded days later.

E. Reporting on inaccuracies in Board minutes led to a formal vote to correct them.
F. A proposed resolution on short-term rentals flagged as potentially unconstitutional in Plaintiff's article was tabled after publication.
G. Articles detailing Carter Thompson's problematic employment history — which officials initially dismissed as unfair — were later vindicated by a suspension and her eventual departure following conduct similar to what was reported by Plaintiff.

These and other examples highlight a pattern: City officials took corrective action only after public exposure, and then turned their ire toward the messenger instead of the misconduct. This supports Plaintiff's Monell claim, showing that retaliatory suppression of dissent, not public interest, was the operative policy.

51. **Impact on Plaintiff's Journalism and First Amendment Principles**

The actions of the City of Ocean Springs and its officials have had a profound chilling effect on Plaintiff's ability to perform his duties as a journalist and have sent a message to all residents and journalists that public accountability will be met with retaliation. By creating a hostile environment, Defendants' conduct sets a dangerous precedent that not only undermines the essential role of a free press but also discourages civic engagement and public scrutiny of government actions, eroding the democratic principles that protect all citizens.

This chilling effect discourages other journalists and members of the community from engaging in open discourse, thereby eroding public trust in local government and diminishing transparency.

Unlike other municipalities Plaintiff has reported on along the Mississippi Gulf Coast, including Moss Point, Gautier, Biloxi, and Pass Christian, the City of Ocean Springs has responded to legitimate press oversight with a pattern of obstruction and retaliation. Other cities, while not always pleased with critical reporting, have engaged in dialogue and worked to address the issues raised. Ocean Springs' choice to weaponize its influence against Plaintiff represents a stark deviation from the norms of governmental accountability and public engagement.

The stonewalling of public records requests, coupled with defamatory public statements and private efforts to discredit Plaintiff, demonstrates the city's intent to punish critical reporting and deter future scrutiny. By targeting Plaintiff, a journalist with a decades-long commitment to upholding the principles of a free press, the Defendants' actions aim to suppress public accountability and discourage other members of the community from questioning government actions.

Despite publishing critical articles about multiple cities along the Mississippi Gulf Coast, including Moss Point, Gautier, Biloxi, and Pass Christian, Plaintiff has only experienced this level of retaliation from Ocean Springs. This stark contrast underscores the city's disdain for accountability and its unwillingness to tolerate legitimate press oversight. Unlike other local governments, which have engaged in dialogue or addressed the issues raised in Plaintiff's reporting, Ocean Springs has chosen to weaponize its influence against him, violating the First Amendment and undermining the public's right to know.

The First Amendment guarantees not only freedom of the press but also the right of citizens to

hold their government accountable. The city's retaliatory actions against Plaintiff are not just an attack on him personally but an attack on these foundational principles. The chilling effect extends beyond Plaintiff, sending a clear message to other journalists and residents: criticize the government at your peril.

Defendants' actions were in clear violation of Plaintiff's well-established rights under the First and Fourteenth Amendments, rights which no reasonable government official could have believed were lawfully subject to suppression or retaliation.

52. **Pattern of Retaliation and Misinformation**

The city's conduct reveals a clear pattern of retaliation designed to silence dissent and discourage investigative reporting. From Alderman Burgess's admitted attempts to provoke Plaintiff and paint him as a threat, to Mayor Holloway's calls seeking to have him fired, to the deliberate omissions and obfuscation in response to public records requests, the city has engaged in a calculated effort to shield its actions from scrutiny. These retaliatory acts are compounded by the spreading of false narratives, such as Burgess's claims of threatening behavior and Carter Thompson's fabricated account of an interaction that never occurred. This pattern demonstrates a blatant disregard for transparency, accountability, and the rights of the press.

Jennifer Burgess's actions against Plaintiff align with her broader pattern of exceeding the bounds of her role as an alderman. By engaging in executive functions, such as negotiating with state agencies and directing city employees, Burgess has demonstrated a belief that she is above the separation of powers mandated by Mississippi law. This unchecked overreach has extended to retaliatory conduct aimed at silencing Plaintiff's reporting, as she perceives journalistic oversight as a personal threat rather than a function of accountability.

Upon information and belief, the individuals who spread defamatory statements regarding Plaintiff's personal life — either directly or through insinuation — relied on an arrest that resulted in no charges and was later dismissed and expunged by court order. Reliance on such sealed, legally nullified information reflects either actual knowledge of falsity or a reckless disregard for the truth, thereby supporting a finding of actual malice.

Despite being formally notified in writing — both by Plaintiff and others — that the allegations were demonstrably false and unsupported by any judicial finding, city officials continued to repeat or endorse the statements. This willful persistence, following a clear and documented cease-and-desist demand, further evidences actual malice and demonstrates the City's ratification of retaliatory defamation under color of law.

The retaliatory actions described herein reflect a de facto policy or custom of the City of Ocean Springs to suppress criticism and retaliate against individuals who exercise their First Amendment rights to free speech and press. The failure of the city's leadership to address or correct these unconstitutional actions, despite being fully aware of them, constitutes a tacit approval of such conduct.

53. **Personal and Emotional Harm to Plaintiff**

Plaintiff is a 100% disabled combat veteran with diagnosed PTSD, sleep disorders, and other ailments resulting from his military service.

The retaliatory actions and obstruction by Defendants, including defamatory public statements, refusal to provide public records, and targeted retaliation against Plaintiff's reporting activities, have caused severe and ongoing emotional distress. These actions have exacerbated Plaintiff's PTSD symptoms, leading to increased anxiety, sleep disruptions, and difficulty managing daily life. The extreme and calculated nature of Defendants' conduct, coupled with their positions of authority, has magnified the emotional toll on Plaintiff, making recovery more difficult

These harms are ongoing and substantial, significantly affecting Plaintiff's ability to conduct his professional and personal life.

54. **Necessity of Declaratory and Injunctive Relief**

Given the ongoing retaliation, misinformation, and attempts to obstruct journalistic efforts, declaratory and injunctive relief are necessary to protect Plaintiff's constitutional rights and to ensure that Ocean Springs officials adhere to their obligations under the law. A declaratory judgment affirming that the city's actions violated Plaintiff's First Amendment rights is essential to hold the city accountable and deter similar conduct in the future. Injunctive relief is also critical to prevent further retaliatory actions, guarantee compliance with public records laws, and safeguard the ability of journalists and residents to engage in open discourse without fear of government reprisal.

The city's behavior sets a dangerous precedent that threatens not only Plaintiff's rights but also the broader principles of a free press and government accountability. This case is not merely about personal retaliation — it is about preserving the integrity of the First Amendment and ensuring that public officials are held to the highest standards of transparency and respect for constitutional rights.

55. **The Broader Threat to Press Freedom**

The actions described in this Complaint represent not only a direct violation of Plaintiff's constitutional rights but also a broader attack on the essential role of a free press in a democratic society. By targeting Plaintiff for his factual reporting, Defendants have sent a chilling message to journalists and residents alike: dissent and public accountability will be met with retaliation. This pattern of behavior threatens to erode public trust in government and suppress the free exchange of ideas and information, which are cornerstones of our democracy.

56. **Pattern of Constitutional Violations by the City of Ocean Springs**

The conduct described in the preceding sections illustrates a persistent pattern of constitutional violations by the City of Ocean Springs and its officials. City representatives, including the mayor, aldermen, city attorney, police chief, and others, engaged in acts of retaliation, selective enforcement, censorship, and viewpoint discrimination. These actions were not isolated incidents

but part of an ongoing, coordinated practice designed to punish protected speech and suppress dissent. This pattern supports Plaintiff's claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and establishes the City's liability for maintaining policies, customs, and practices that violate the First and Fourteenth Amendments.

57. **Loss of Employment and Opportunity**

As a direct result of the retaliatory actions detailed in this complaint, Plaintiff's anticipated long term employment with the Ocean Springs Weekly Record was downgraded to freelance submissions and eventually severed completely. Following increased threats from Wilkinson and his associates, the publication terminated its relationship with Plaintiff, citing concerns for costly legal fees as a direct result from Wilkinson and other officials badgering the company over Plaintiff's factual reporting.

**Preserved Evidence**

58. Plaintiff has preserved recordings, emails, text messages, transcripts, and other documentary evidence that corroborate the allegations described herein. While these materials are not attached to the present complaint, Plaintiff will produce them during discovery and in opposition to any dispositive motions filed by Defendants, ensuring the Court has access to a compelling record of the alleged conduct. By introducing evidence at these critical stages, Plaintiff aims to demonstrate the substantive merit of his claims and counter any defenses raised by Defendants. Plaintiff also reserves the right to present additional evidence discovered during the course of this litigation, which may further substantiate the allegations outlined herein.

Plaintiff has preserved and is also in possession of additional evidence of retaliatory conduct, including knowingly false statements made by public officials about Plaintiff's character, personal history, and legal record. These attacks — disseminated publicly and endorsed by individuals acting under color of law — will be introduced during discovery and at trial in support of Plaintiff's claims for defamation, stigma-plus due process violations, and retaliatory motive.

The decision not to attach these materials to the initial complaint reflects a deliberate strategy to streamline these proceedings and reserve detailed evidentiary presentation for appropriate stages, including opposition to dispositive motions and trial. This approach underscores the strength of Plaintiff's case and ensures the Court will have access to a robust evidentiary record when it is most relevant to its decision-making.

**Claims for Relief**

**Count I: Violation of First Amendment Rights (Retaliation)**

**Defendants**:

- Kenny Holloway (in his official and individual capacities)

- Jennifer Burgess (in her official and individual capacities)

- Patty Gaston (in her official and individual capacities)
- Ken Papania (in his official and individual capacities)
- Mike Impey (in his official and individual capacities)
- Robert Wilkinson (in his official and individual capacities)
- Kenny Williams (in his official and individual capacities)
- Bonnie Munro(in her official and individual capacities)
- Ryan Lemaire (in his official and individual capacities)
- John/Jane Does 1-10
- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendants, acting individually and in concert under color of state law, retaliated against Plaintiff for engaging in constitutionally protected speech, including but not limited to journalism critical of public officials, public records requests, and the filing of a notice of intent to sue.

3. As detailed in the Factual Background, Defendants' retaliatory actions include threats, denial of services, dissemination of defamatory claims, selective enforcement of ordinances, suppression of public access, and interference with Plaintiff's right to petition and report on government activity. These examples are representative and do not reflect the full scope of the retaliation.

4. Defendants' actions were motivated by animus toward Plaintiff's protected activity and were intended to chill or punish his exercise of First Amendment rights.

**Count II: Violation of Fourteenth Amendment Rights (Equal Protection)**

**Defendants**:

- Kenny Holloway (in his official and individual capacities)
- Jennifer Burgess (in her official and individual capacities)
- Patty Gaston (in her official and individual capacities)
- Ken Papania (in his official and individual capacities)
- Mike Impey (in his official and individual capacities)
- Robert Wilkinson (in his official and individual capacities)
- Kenny Williams (in his official and individual capacities)
- Bonnie Munro(in her official and individual capacities)
- Ryan Lemaire (in his official and individual capacities)
- John/Jane Does 1-10

- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The Equal Protection Clause of the Fourteenth Amendment prohibits government officials from selectively enforcing laws or policies based on a citizen's viewpoint, protected speech, or personal identity.

3. Defendants, acting under color of law, treated Plaintiff differently from similarly situated individuals solely because of his constitutionally protected activities, including his investigative journalism, criticism of public officials, and public records inquiries.

4. As described in the Factual Background, Defendants engaged in a pattern of discriminatory enforcement and denial of services: refusing to respond to Plaintiff's requests, publicly disavowing their duty to represent him, withholding public information routinely given to others, and selectively applying laws and policies to hinder Plaintiff's access and expression. These incidents are illustrative and do not represent the full extent of unequal treatment.

5. Defendants' actions were not based on any legitimate governmental interest, but rather on animus toward Plaintiff's viewpoint and intent to suppress dissent and public accountability. This unequal treatment violated Plaintiff's rights under the Fourteenth Amendment.

**Count III: Violation of Mississippi Public Records Act**

**Defendants**:

- Kenny Holloway (in his official and individual capacities)
- Jennifer Burgess (in her official and individual capacities)
- Patty Gaston (in her official and individual capacities)
- Robert Wilkinson (in his official and individual capacities)
- John/Jane Does 1-10
- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The Due Process and Equal Protection Clauses of the Fourteenth Amendment protect an individual's right to access government services and forums without discrimination or retaliation based on viewpoint or protected speech.

3. Defendants, acting under color of law, deliberately obstructed Plaintiff's ability to access government information, services, and representatives. This included refusing to answer legitimate public inquiries, requiring Plaintiff alone to route questions through indirect channels, excluding him from constituent services routinely offered to others, and ignoring or retaliating against formal attempts to engage with city leadership.

4. These acts of exclusion were motivated by Plaintiff's constitutionally protected speech, including his investigative reporting and criticism of city officials. As detailed in the Factual Background, Defendants' behavior was part of a broader campaign to isolate Plaintiff from public participation and hinder his ability to exercise rights guaranteed by law. These examples are representative, not exhaustive.

5. The denial of access imposed by Defendants violated Plaintiff's Fourteenth Amendment rights by conditioning basic government services on political compliance and suppressing dissent through structural and procedural barriers.

**Count IV: Violation of Fourth Amendment Rights (Unlawful Search and Seizure – Audio Surveillance)**

**Defendants**:

- Kenny Holloway (in his official and individual capacities)
- Patty Gaston (in her official and individual capacities)
- John/Jane Does 1-10
- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, including warrantless government surveillance that invades areas where a person has a reasonable expectation of privacy. See *Katz v. United States*, 389 U.S. 347 (1967). This protection extends to audio recordings of conversations in semi-private spaces not marked or designated for public monitoring.

3. The City of Ocean Springs, through its agents and employees, caused or allowed the installation and use of audio surveillance devices inside City Hall without public notice, signage, or policy. The devices captured conversations in the hallway outside the Board of Aldermen meeting room, a location where private and semi-private conversations frequently occur between journalists, officials, and residents.

4. Plaintiff conducted numerous personal and professional conversations in this hallway, including phone calls and interviews, with a reasonable expectation of privacy and no knowledge that audio surveillance was occurring. No signs or warnings were posted, and the City later admitted it had no policy governing who could access the recordings, how often, or for what purpose.

5. Plaintiff sent a formal inquiry to City Clerk Patty Gaston on June 2, 2025, seeking confirmation about the extent of access to the recordings. Gaston did not respond. Meanwhile, whistleblowers confirmed that city staff routinely accessed recordings, including following public meetings.

6. This warrantless, non-consensual audio surveillance violated Plaintiff's clearly established Fourth Amendment rights. Defendants failed to demonstrate any lawful basis, public safety justification, or procedural safeguards associated with the recordings. The absence of access controls, retention policies, or oversight further underscores the unconstitutional nature of the surveillance.

7. As a direct result of this practice, Plaintiff suffered a violation of his privacy, emotional distress, and a chilling effect on his ability to gather news and speak freely. Defendants are liable under 42 U.S.C. § 1983 for the violation of Plaintiff's Fourth Amendment rights.

8. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including but not limited to emotional distress, reputational harm, loss of professional opportunities, and violation of constitutional rights, for which he seeks compensatory and punitive damages.

## Count V: Defamation

**Defendants:**

- Kenny Holloway (in his official and individual capacities)
- Jennifer Burgess (in her official and individual capacities)
- Patty Gaston (in her official and individual capacities)
- Ken Papania (in his official and individual capacities)
- Mike Impey (in his official and individual capacities)
- Robert Wilkinson (in his official and individual capacities)
- Kenny Williams (in his official and individual capacities)
- Bonnie Munro(in her official and individual capacities)
- Ryan Lemaire (in his official and individual capacities)
- John/Jane Does 1-10
- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Under Mississippi law, a defendant is liable for defamation when they make a false and defamatory statement about the plaintiff to a third party, with at least negligent disregard for its falsity, and the statement causes harm to the plaintiff's reputation or standing in the community.

3. Defendants, acting individually and in coordination, made and disseminated false factual assertions about Plaintiff, including—but not limited to—accusations that he was mentally unstable, dishonest in his reporting, and abusive toward women. These statements were knowingly false or made with reckless disregard for their truth or falsity.

4. Several of these defamatory statements were made by individuals in positions of governmental authority, including the City Attorney and members of the Board of Aldermen. In some cases, statements were made directly to members of the press, to city staff, and to members of the public with the intent to discredit Plaintiff's journalism, isolate him from civic discourse, and undermine his professional reputation.

5. These statements were not made in any official governmental proceeding or protected legislative context, nor were they subject to any valid privilege. Rather, they were motivated by personal animus and political retaliation.

6. As a result of these false and defamatory statements, Plaintiff has suffered reputational harm, emotional distress, loss of professional opportunities, and further retaliation by city officials and third parties influenced by the defamatory messaging.

7. Plaintiff complied with the notice provisions of the Mississippi Tort Claims Act by serving written notice of these claims on December 10, 2024, more than 90 days before filing suit.

## Count VI: Intentional Infliction of Emotional Distress

**Defendants**:

- Kenny Holloway (in his official and individual capacities)
- Jennifer Burgess (in her official and individual capacities)
- Patty Gaston (in her official and individual capacities)
- Ken Papania (in his official and individual capacities)
- Mike Impey (in his official and individual capacities)
- Robert Wilkinson (in his official and individual capacities)
- Kenny Williams (in his official and individual capacities)
- Bonnie Munro(in her official and individual capacities)
- Ryan Lemaire (in his official and individual capacities)
- John/Jane Does 1-10
- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Under Mississippi law, a defendant is liable for intentional infliction of emotional distress when their conduct is so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society.

3. Defendants engaged in a prolonged pattern of harassment, retaliation, defamation, and targeted exclusion of Plaintiff because of his constitutionally protected speech and activities, including his journalism and public criticism of city officials. This conduct included false public accusations, denial of government services, coordinated discrediting efforts, and the knowing spread of stigmatizing personal attacks.

4. Defendants' conduct was deliberate, malicious, and calculated to cause Plaintiff severe emotional distress, humiliation, and social and professional harm.

5. As a result of this sustained campaign, Plaintiff experienced emotional trauma, reputational damage, sleep disruption, and deterioration of personal and professional relationships. These injuries were foreseeable and directly caused by Defendants' intentional and extreme misconduct.

## Count VII: Municipal Liability under 42 U.S.C. § 1983

**Defendant:**

- The City of Ocean Springs

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. At all relevant times, Defendant City of Ocean Springs acted under color of state law through its officials, agents, and employees, including those with final policymaking authority.

3. The violations of Plaintiff's constitutional rights described in this Complaint—including First and Fourth Amendment retaliation, denial of access, unequal treatment, unlawful surveillance, and other abuses—were carried out pursuant to the City's official policies, widespread practices, or deliberate decisions by officials with final authority.

4. These constitutional violations were not isolated acts by rogue employees but were part of an entrenched and coordinated pattern of behavior by senior City personnel, including the Mayor, City Attorney, members of the Board of Aldermen, and department heads. The City either directed these actions, had actual knowledge of them and failed to intervene, or maintained customs and practices that encouraged or condoned such conduct.

5. The City's failure to discipline, supervise, or correct unlawful actions by its officials, combined with its retaliatory posture toward dissent, directly resulted in the harms suffered by Plaintiff. The City also failed to implement or enforce adequate safeguards to prevent these types of constitutional abuses.

6. As a direct and proximate result of the City's policies, customs, and deliberate indifference, Plaintiff suffered violations of his constitutional rights, including deprivation of free speech, privacy, access to government, and equal protection under the law.

## Count VIII: Violation of the Mississippi Security of Communications Act

**Defendant:**

- Kenny Holloway (in his official and individual capacities)

- Patty Gaston (in her official and individual capacities)

- The City of Ocean Springs

- John/Jane Does 1-10

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The Mississippi Security of Communications Act prohibits the intentional interception, disclosure, or use of any oral communication without the consent of at least one party to

the communication, where there is a reasonable expectation of privacy. See Miss. Code Ann. §§ 41-29-531 to -537.

3. Defendants, acting under color of law, caused or permitted the installation and use of covert audio surveillance devices inside Ocean Springs City Hall, including at public counters and meeting spaces where citizens engaged in personal or sensitive conversations with city officials.

4. These devices were not disclosed to the public by signage or any other form of notice. Members of the public—including Plaintiff—had a reasonable expectation that their conversations in these spaces would not be secretly recorded by the government.

   Upon information and belief, Plaintiff's voice was recorded at least once by these unmarked listening devices, without his consent and outside the scope of any legal warrant, court order, or exception authorized by state law.

5. The installation, operation, and use of these covert devices constituted an unlawful interception of oral communications in violation of Miss. Code Ann. § 41-29-533 and related provisions.

6. These violations were intentional or, at minimum, carried out with reckless disregard for Plaintiff's privacy rights. The recordings were retained or used for retaliatory or monitoring purposes, further aggravating the unlawful conduct.

7. As a direct and proximate result, Plaintiff suffered an invasion of privacy, emotional distress, and a chilling of his lawful efforts to engage with government officials.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **Award compensatory damages** in an amount to be determined at trial for the emotional distress, reputational harm, economic losses, and other injuries suffered by Plaintiff as a direct and proximate result of Defendants' unlawful conduct;

2. **Award punitive damages** against the individual Defendants who are not protected by immunity, in an amount sufficient to punish and deter future unconstitutional and retaliatory actions;

3. **Award nominal damages** for the violation of Plaintiff's constitutional rights, even in the absence of proven economic harm;

4. **Award pre-judgment and post-judgment interest** as permitted by law;

5. **Grant declaratory and injunctive relief** as appropriate, including orders enjoining Defendants from further acts of retaliation or other constitutional violations;

6. **Award reasonable attorney's fees and litigation expenses**, including but not limited to filing fees, transcript costs, service of process, document reproduction, travel expenses, and other costs

incurred in preparing and maintaining this action, pursuant to 42 U.S.C. § 1988 and other applicable law;

7. **Grant** such other and further legal and equitable relief as the Court deems just, including any measures necessary to remedy the constitutional injuries described herein and to prevent future violations.

**Jury Demand**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Eric Brian Rosenberg
/s/ Eric Brian Rosenberg
a.k.a. E. Brian Rose
In Pro Se
1207 Londonderry Lane
Ocean Springs, MS 39564
(228) 238-3945
ebrianrose@gmail.com