**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ERIC BRIAN ROSENBERG, A/K/A E.
BRIAN ROSE**                                                **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO.: 1:25-cv-00182-HSO-BWR**

**CITY OF OCEAN SPRINGS,**                                  **DEFENDANTS**
**MISSISSIPPI, ET AL.**

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

This case is an excellent example of the adage "he can dish it out but can't take it." *Pro se* Plaintiff Eric Rosenberg is a public figure, specifically a former political candidate[1] and a news reporter, who frequently criticizes public officials. Yet despite his frequent criticism, Plaintiff claims his rights were violated by conduct such as public employees claiming his reporting is inaccurate. *E.g.*, Doc. No. 3 at ¶28.

Plaintiff is simply wrong about what protection the law affords. The First Amendment protects the speech of those being targeted just as it protects the speech of Plaintiff. Plus, nothing any of the defendants have done has operated to chill Plaintiff's speech, a required element for a cognizable First Amendment claim. There are many other problems with the litany of claims Plaintiff brings within his shotgun complaint against numerous defendants,[2] but the short of this

---

[1]    Plaintiff was defeated in the 2018 Republican primary for Mississippi's 4th Congressional District seat by a whopping 70.5% to 29.5% margin. *See, e.g.,* BallotPedia.Org, available at *https://ballotpedia.org/Mississippi%27s_4th_Congressional_District_election_(June_5,_2018_Republican_primary )* (last visited August 31, 2025). During that campaign, it was reported that Plaintiff "attacked incumbent fourth district Rep. Steven Palazzo" by accusing him of "stolen valor[.]" In response, Rep. Palazzo called the attack "disgusting[,]" saying "my opponent should be ashamed." *See* WLOX Article, available at *https://www.wlox.com/story/36056118/congressional-candidate-releases-documents-on-rep-palazzos-military-record/* (last visited Aug. 31, 2025). This exchange is simply one example of Plaintiff thrusting himself into the public debate.

[2]    Plaintiff filed this lawsuit against Defendants the City of Ocean Springs, Mississippi, Kenny Holloway in his official and individual capacity, Jennifer Burgess in her official and individual capacity, Patty Gaston in her official and individual capacity, Ken Papania in his official and individual capacity, Mike Impey in his official and individual capacity, Robert Wilkinson in his official and individual capacity, Kenny Williams in his official and individual

case is that there is an ongoing exchange of insults by Plaintiff, on the one side, and responses from the defendants, on the other side, both of whom are exercising their constitutional right to denounce the other. The case is not anything that ever should have ended up on a federal docket, so dismissal is required.

## BACKGROUND

Plaintiff portrays himself as a journalist who primarily focuses his reporting on local governments across the Mississippi Gulf Coast. Doc. No. 3 at ¶¶20, 39. According to the complaint, his articles discuss controversial topics in coastal Mississippi cities, such as Ocean Springs, including ethics violations, zoning disputes, government overreach, and public accountability. *Id*. at ¶39. Plaintiff previously published his work through the Ocean Springs Weekly Report, but he now operates his own website, GCWIRE.COM, where he continues to publish his content. *Id*. at ¶¶55, 125, 126.

The events leading up to this lawsuit began in September of 2024, when Plaintiff published articles in the Ocean Springs Weekly Record criticizing City officials. *Id*. at ¶¶55-56. Plaintiff claims that, in response, City officials began retaliating against him in various ways, including supposed defamatory statements, derogatory remarks, interfering with his professional and professional relationships, and obstructing his access to public records. *Id*. at ¶¶12. The retaliation also allegedly extended to his employment with the Ocean Springs Weekly Record, where he claims that the City's actions led to his termination. *Id*. at ¶¶12, 284.

Despite the alleged retaliation, Plaintiff continued, and continues in present day, publishing articles questioning and criticizing the City and its officials for a host of purported issues, including but not limited to wrongful surveillance, conflicts of interest, environmental concerns, City

---

capacity, Bonnie Munro in her official and individual capacity, and Ryan Lemaire in his official and individual capacity.

policies, and resolutions. *Id.* at ¶¶131, 150, 217, 254. In one recent post, Plaintiff provided his readers with a "Case Update" and proclaimed: "I will continue to report on matters of public interest, just as I always have." *See* Case Update Post, available at *https://www.facebook.com/ebrianrose/posts/case-update-theres-been-a-lot-of-chatter-claiming-my-lawsuit-is-about-to-be-dism/24725514620407698/* (last visited Aug. 31, 2025).

Through this motion, defendants challenge all claims within Plaintiff's 49-page, single-spaced shotgun complaint. While it is difficult to wade through the morass since Plaintiff "fails to adequately link the causes of action to their attendant factual predicates" as the Federal Rules require, *see, e.g., White v. City of Grenada*, 2021 WL 4449276, *5 (N.D. Miss. 2021), defendants will demonstrate the many legal barriers to Plaintiff's lawsuit.

## LEGAL STANDARD

Under Rule 12(b)(6), the central question is whether the complaint includes a claim that provides a plausible basis for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). This question is answered by comparing the legal claim that has been identified in the complaint with the factual allegations offered in support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving this motion, the Court may consider the complaint, documents attached to the complaint, documents central to the claims that are referenced in the complaint, and matters of public record, such as documents filed in federal and state court. *E.g.*, *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (April 12, 2017); *Joseph v. Bach & Wasserman, LLC*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012). Merely reciting the elements of a cause of action, or making conclusory factual or legal assertions, are insufficient to defeat a motion to dismiss. *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018).

## ARGUMENT & AUTHORITIES

The operative complaint purports to bring the following federal and state claims, either collectively or in some combination: (1) violation of First Amendment rights (retaliation), (2) violation of Fourteenth Amendment Rights (equal protection), (3) violation of Mississippi Public Records Act, (4) violation of Fourth Amendment rights (unlawful search and seizure – audio surveillance), (5) defamation, (6) defamation per se, (7) intentional infliction of emotional distress, (8) municipal liability, and (9) violation of the Mississippi Security of Communications Act. *See generally* Doc. No. 3. All should be dismissed.

With respect to federal law, the applicable Section 1983 framework is well settled. For there to be personal liability against the individuals, a plaintiff must overcome the qualified-immunity defense, meaning that he must show both (1) a constitutional or federal law violation and (2) that the individual-capacity defendant's actions were objectively unreasonable under clearly established law. *See, e.g., Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). For there to be municipal liability against the City, Plaintiff would have to show (1) a constitutional violation that (2) was caused by an unconstitutional policy or custom. *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008).

With respect to state law, when a "governmental entity or its employee" is sued "for acts or omissions[,]" the MTCA "provides the <u>exclusive</u> civil remedy[.]" *See J.E. v. Jackson Pub. Sch. Distr.*, 264 So.3d 786, 791 (Miss. Ct. App. 2018) (emphasis added). And the statute includes both procedural and substantive requirements that must be satisfied for liability to attach. By way of example, a plaintiff must provide proper notice, must clear any applicable exemptions, and also must meet the substantive elements of the underlying tort. *See Horton v. City of Vicksburg*, 268 So.3d 504, 508 (Miss. Ct. App. 2018).

Plaintiff's different claims are addressed in turn.

## I.    First Amendment Retaliation

To prevail on a First Amendment retaliation claim, Plaintiff must show that "(1) [he] was engaged in constitutionally protected activity[;] (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct." *McLin v. Ard*, 866 F.2d 682, 696 (5th Cir. 2017) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Importantly, "[t]he second element 'requires some showing that the plaintiff's exercise of free speech has been curtailed.'" *Id*. (quoting *Keenan*, 290 F.3d at 259).

Plaintiff's complaint contains nothing more than a repeated, insufficient conclusory allegation that the defendants' actions had a chilling effect on his First Amendment rights. *Id*. at 697 *(citing Spear v. Town of West Hartford,* 954 F.2d 63, 67 (2d Cir. 1992) (finding that a plaintiff's allegation of a chill "was conclusory and speculative" when "[t]he complaint offered nothing beyond a bare assertion that the lawsuit cause[ed] a chilling effect upon his First Amendment rights")); *Mills v. Bogalusa*, No. 13-5477, 2014 WL 2993426, at *4 (E.D. La. Jul. 2, 2014) (dismissing retaliation claim where plaintiff failed to plead "specific facts showing actual curtailment in response to defendants' allegedly retaliatory activity"). And it is beyond debate that Plaintiff's journalism, including coverage of Ocean Springs, has not been slowed or curtailed by any means.

A simple review of Plaintiff's website, GCWIRE.COM[3], shows the frequency of which Rosenberg reports on the City and its officials. In fact, Plaintiff published an article on August 5,

---

[3]    "When ruling on a 12(b)(6) motion, the [c]ourt may consider 'the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial

2025, discussing this lawsuit and quoted himself as saying, "[t]he public has a right to know what their government is doing behind closed doors…. [i]f that makes some people uncomfortable, they're in the wrong business."[4] Accusatory articles regarding City officials continue to be published,[5] and Plaintiff has expressly stated, "I will continue to report on matters of public interest, just as I always have." *See* Case Update Post, available at https://www.facebook.com/ebrianrose/posts/case-update-theres-been-a-lot-of-chatter-claiming-my-lawsuit-is-about-to-be-dism/24725514620407698/ (last visited Aug. 31, 2025).

Underscoring the deficiency is Judge Jordan's decision in *Lousteau v. City of Canton, Miss.*, 2013 WL 5755243 (S.D. Miss. 2013). In that case, a radio host repeatedly bashed public officials and then alleged he was subjected to "a campaign of retaliatory conduct against him for exercising his First Amendment rights." *Id*. at *4. But the lawsuit was thrown out for the same reason this one should be – namely, a lengthy record of continued commentary and an admission that the commentary would not cease. *Id*. at *6 ("So in light of his continued comments and his own testimony regarding his subjective intent to continue speaking, no reasonable juror could find that Defendants' actions had an actual chilling effect on Lousteau's speech.").

What's more is that Plaintiff fails to allege anything other than a de minimis "adverse action" that attributable to the alleged retaliation. "Certainly, some retaliatory actions – even if they actually have the effect of chilling the plaintiff's speech – are too trivial or minor to be

---

notice.'" *Greater Houston Transp. Co. v. Uber Techs., Inc.,* No. CIV.A. 4:14-0941, 2015 WL 1034254, at *5 (S.D. Tex. Mar. 10, 2015) (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011)); "[A] court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.,* 456 F. App'x 336, 340 (5th Cir. 2011); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). Plaintiff's own publications are central to his claims and the publications are referenced throughout the Complaint.

[4] https://gcwire.com/city-attorney-turned-to-police-in-effort-to-silence-investigative-reporting/ (last visited Aug. 29, 2025).

[5] https://gcwire.com (last visited Aug. 29, 2025).

actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. For example, in *Colson*, city officials "falsely accused [a city councilor] of criminal acts, urged prosecutors to investigate her, and instigated a recall election against her because they disagreed with her political views and votes." *Colson v. Grohman*, 174 F.3d 498, 513 n.8 (5th Cir. 1999). However, the city councilor was "never arrested, indicted, or subjected to a recall election," such that the court held "retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable." *Id*. at 511-13. The court also recognized that the alleged retaliation "did not stop her from running for reelection," bolstering its finding that the alleged harm did not rise to a sufficiently adverse level. *Id*. at 514.

Plaintiff here alleges that the Defendants interfered with his employment with the Ocean Springs Weekly Record, fabricated allegations against him, defamed him, and generally damaged his professional reputation. Doc. No. 3 at ¶¶14, 28, 107, 237, 284. But these are nothing more than bare allegations of, at most, "great personal damage" which is insufficient to show an adverse action that "reduced or changed his exercise of free speech in any way." *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992).

Equally significant is that "[t]he First Amendment itself ensures the right to respond to speech we do not like, and for good reason." *U.S. v. Alvarez*, 567 U.S. 709, 728, 132 S.Ct. 2537, 2550 (2012). What Plaintiff complains of is merely the Defendants' counter-speech to his own inflammatory speech. But Defendants are not required to stand idly by and avoid any criticism of Plaintiff's publications that are inaccurate, out of context, or plainly false. In fact, this lack of action is constitutionally discouraged.[6] *See id*. ("And suppression of speech by the government can

---

[6] "[P]olitical speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).

make exposure of falsity more difficult, not less so. Society has the right and civic duty to engage in open, dynamic, rational discourse."); *Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence").

"[I]f we held that lawful counter-speech—let alone a response to a FOIA request—could significantly burden the freedom of expressive association, parties could counterintuitively use their First Amendment rights 'as a weapon to silence' other speech they disliked." *Blick v. Ann Arbor Public School Dist.,* 105 F.4th 868, 883-84 (6th Cir. 2024) (quoting *Hous. Cmty. Coll. Sys. v. Wilson,* 595 U.S. 468, 478–79, 142 S.Ct. 1253, 212 L.Ed.2d 303 (2022)). The Defendants, in accordance with the First Amendment, are allowed to have counter-speech that refutes the offensive content of another.

## II.    Fourteenth Amendment

Plaintiff alleges that the Municipal Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently than other similarly situated individuals through the selective enforcement of the law. Doc. No. 3 at p.40. Notably, however, Plaintiff fails to identify what law the Defendants supposedly are enforcing against him and not against others. In fact, the complaint contains nothing more than vague, conclusory statements that some of the Municipal Defendants' actions constituted violations of his Fourteenth Amendment rights. *See generally id*. Without more, Plaintiff's claims fail.

"[T]o successfully bring a selective ... enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d

PD.50703968.1

267, 277 (5th Cir. 2000). "As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently." *Id.* at 276 (citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)). "'Similarly situated' means 'in all relevant respects alike.'" *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022). Plaintiff has failed to satisfy this initial burden, as he does not provide a single example of an individual similarly situated who was treated differently under the law for the same conduct.

### III.    Mississippi Public Records Act (Fourteenth Amendment)

Rosenberg alleges that the Municipal Defendants violated the Mississippi Public Records Act, and in turn his Fourteenth Amendment rights, by obstructing his ability to access government information, services, and representatives. But the law is clear that alleging Defendants "did not comply with the Mississippi Public Records Act … fails to state a claim." *Raiford v. County of Forrest, Mississippi*, NO. 2:16-cv-174-KS-MTP, 2018 WL 3323627, at *3 (S.D. Miss. Feb. 23, 2018); *see Bernegger v. Office of State Auditor of Mississippi*, No. 3:12-CV-161-DPJ-FKB, 2012 WL 2573246, at *2 n.4 (S.D. Miss. July 2, 2012) (citing *C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 546 (5th Cir. 2011)) ("[A]ny alleged violation of the Mississippi Public Records Act does not implicate a federally protected right."). "Access to public records pursuant to state or local law is not a right guaranteed by federal law." *Raiford, 2018 WL 3323627* at 3; *Eaker v. City of Moss Point, Miss.*, 2021 WL 771756, No. 1:20-cv-92-HSO-JCG at *7 (S.D. Miss. Feb. 26, 2021)[7] (citing *Houchins v. KOED, Inc.*, 438 U.S. 1, 15 (1978)). "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Gaubert v. Denton*, 1999 WL 350103,

---

[7] The *Eaker* court found that verbal abuse and intimidation was "unprofessional or inappropriate" but not "ris[ing] to the level of actional constitutional injury under §1983." *Eaker*, 2021 WL 771756, at *8.

*5 (E.D. La. May 28, 1999) (citing Houchins 438 U.S. at 15); *American Civil Liberties Union v. State of Mississippi*, 911 F.2d 1066, 1071–72 (5th Cir. 1990)).

IV.    **Fourth Amendment**

Plaintiff alleges that the City, Kenny Holloway, and Patty Gaston violated his Fourth Amendment right to be free from unreasonable search and seizure, specifically warrantless government surveillance, through the use of audio recording devices located in the public areas of Ocean Springs city hall. Doc. No. 3 at ¶42; p. 42. To satisfy his burden in pleading a Fourth Amendment claim, Plaintiff must plead facts establishing (1) that a search or seizure within the meaning of the Fourth Amendment occurred and (2) that such search or seizure was unreasonable. *Perre v. East Bank Consolidated Special Service Fire Protection District*, 741 F.Supp.3d 488, 495 (E.D. La. 2024). He has not done so.

It is dispositive that the "Fourth Amendment protects [only] those areas in which … citizens have a reasonable expectation of privacy." *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993) (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The expectation of privacy must not be a subjective one, rather "the expectation of privacy must be one that society is prepared to recognize as reasonable." *U.S. v. Smith*, 978 F.2d 171, 177 (5th Cir. 1992). On this principle, Plaintiff's claim fails, as there was no reasonable expectation of privacy in conversations had in open and public hallways of Ocean Springs' City Hall.

The Fifth Circuit has recognized that "common, or public, areas – those areas to which the public and others, such as law enforcement officers, have access – courts generally hold that a party possesses no reasonable expectation of privacy and that the Fourth Amendment is thus not implicated." *United States v. Ramirez*, 145 F. App'x 915, 923 (5th Cir. 2005) (citing cases). And

courts across the country have reached similar conclusions.[8] One example of a dismissal on the pleadings is *Plock v. Bd. of Educ. of Freeport Sch. Dist*., No. 145, 545 F. Supp. 2d 755, 758 (N.D. Ill. 2007). There, the court emphasized the following: "[a] classroom is a public space in which government employees communicate with members of the public. There is nothing private about communications which take place in such a setting." *Plock*, 545 F.Supp.2d at 758. The court continued that an expectation of privacy in school classrooms was "inherently unreasonable and beyond the protection of the Fourth Amendment." *Id*.

Only under limited circumstances is there a reasonably expectation of privacy in public spaces. *See Katz*, 389 U.S. at 351. Here, Plaintiff has failed to plead facts detailing how the alleged conversations were conducted in a manner that would support an objectively reasonable expectation of privacy. Instead, Plaintiff relies on the conclusory allegation that "confidential phone calls and discussions" were had in public areas of City Hall. Doc. No. 3 at ¶216. This amounts to nothing more than an impermissible "formulaic recitation" of the elements of a Fourth Amendment claim." *See Twombly*, 550 U.S. at 555. Plaintiff is not aware that any of his conversations were actually overheard, nor does he allege that he took any precautions to maintain privacy while in a public setting. Rather, Plaintiff repeatedly admits that his alleged private conversations took place in public hallways, which fails to show any attempt at maintaining privacy. Doc. No. 3 at ¶215.

---

[8]    *See U.S. v. Anderson*, 160 Fed.Appx. 291, 392 (5th Cir. 2005) (Holding that there was no reasonable expectation of privacy in public area outside of a motel room); *See United States v. Cook*, 904 F.2d 37 (6th Cir. 1990) ("We hold that a person's expectation of privacy does not extend to the areaway outside a rented storage locker in a public facility."); *State v. Peltz*, 391 P.3d 1215, 1222–23 (Ariz. Ct. App. 2017) ("Participants of a conversation that can be readily overheard by someone standing in a public place have a lesser expectation of privacy."); *United States v. Wells*, 739 F.3d 511, 518 (10th Cir. 2014) ("[N]either video nor audio surveillance automatically violates the Fourth Amendment; when such surveillance is conducted in a public place such as a bank, where no reasonable expectation of privacy exists, the surveillance is not subject to suppression."); *See, e.g., State v. Garcia*, 252 So. 3d 783, 785 (Fla. Dist. Ct. App. 2018) (an "expectation [of privacy] is not reasonable where "[t]he intercepted communication was made in an open, public area rather than in an enclosed, private, or secluded area") (citation omitted)

To the extent that Rosenberg improperly attempts to use the Fourth Amendment rights of others to bring this claim, alleging that Defendants recorded conversations of third parties, Plaintiff may not assert the rights belonging to another in this suit. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) ("Fourth Amendment rights are personal rights, which may be enforced only by the person whose rights were infringed.").

## V.    Qualified Immunity

Plaintiff has failed to allege any specific action of any Municipal Defendant that would constitute a constitutional violation. But even if Plaintiff could demonstrate a constitutional violation against any of the Defendants, they would each be entitled to dismissal on qualified immunity grounds. Indeed, when qualified immunity is asserted, "it is not enough for Plaintiff to adequately demonstrate constitutional violations." *Franco v. Kluge*, No. 13-cv-313, 2015 WL 1637688, at *4 (W.D. Tex. Apr. 13, 2015).

Government officials are entitled to qualified immunity if (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "'Clearly established'" means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id.* (citation omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*

*Framework.* Plaintiff shoulders the burden of defeating qualified immunity. *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). To do so, Plaintiff has two options: (1) proffer a precedential case that "squarely governs" the conduct at issue, i.e. "the analogous-case

requirement" or (2) demonstrate the conduct at issue is an "obvious" case of unconstitutional behavior, i.e., the "obvious" exception. *Cope v. Cogdill*, 3 F.4th 198, 204-12 (5th Cir. 2021). This case certainly does not implicate the very rare "obviousness" exception, for "[t]he standard for obviousness is sky high[.]" *See Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). Plaintiffs' first amendment retaliation, fourteenth amendment equal protection, fourth amendment unlawful search and seizure encompass a "reasonableness" analysis, and, in such circumstances, the Supreme Court has warned that proffering an analysis is "especially important[.]" *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Unless <u>every</u> single reasonable government official would know "immediately" "in the blink of an eye" that his or her conduct is unconstitutional because of the authoritative precedent, then qualified immunity must be granted. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting Supreme Court precedent). This requires a high "degree of specificity." *Wesby*, 133 S. Ct. at 590 (citation omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* This principle reflects a "manifestation of the law's general concern about retroactive punishment or liability." *Wesby v. District of Columbia*, 816 F.3d 96, 110 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (citing Supreme Court precedent).

The Plaintiff will not come close to satisfying <u>his burden</u>, which requires him to identify a factually analogous case, from either the Supreme Court or the Fifth Circuit, holding that Municipal Defendants' specific conduct was unconstitutional for the simple reason that none exists. *See Morrow,* 917 F.3d at 876 (holding that appellants "have not identified a controlling precedent"); *Bustillos v. El Paso Cty. Hosp. Distr.*, 891 F.3d 214, 222 (5th Cir. 2018) (holding that

"Appellant has not carried her burden of pointing this panel to any case that shows, in light of the specific context of this case, that the Doctors' or Nurses' conduct violated clearly established law"); *Vann v. Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (holding that plaintiff "cited nary a pre-existing or precedential case" defeating qualified immunity). The Supreme Court has imposed a requirement that "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552; *see also Wesby*, 138 S. Ct. at 590 ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the [Constitution]."). Importantly, the Plaintiff must not only identify the analogous case but must also "explain the analogy."  *Joseph v. Bartlett*, 981 F.3d 319, 346 (5th Cir. 2020).

The Fifth Circuit has reiterated that "[t]he qualified-immunity doctrine makes" obtaining "money damages from the personal pocket of a law enforcement officer" "difficult in every case." *See Morrow*, 917 F.3d at 874. In that same opinion, it was explained that qualified immunity presented a "heavy burden" for plaintiffs and that the denial of qualified immunity is an "extraordinary remedy."  *Id.* at 874, 876.  The Fifth Circuit has warned:  Qualified immunity "'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (emphasis added) (citation omitted).  This is not such a rare case.

### VI.    <u>Municipal Liability</u>

Municipal liability against the City cannot be reached without an underlying constitutional violation. *Wade v. City of Houston*, 110 F.4th 797, 800 (5th Cir. 2024) (per curiam) ("And because there was not underlying constitutional violation, the municipal- and supervisory-liability claims against the City of Houston and former Chief Acevedo were appropriately dismissed.").  Because Plaintiff cannot demonstrate a constitutional violation against an individual official of the City, he also cannot maintain a cognizable claim against the City.

PD.50703968.1

Even if he could, a mere constitutional violation is never enough to establish municipal liability because municipalities are not responsible for the actions or inactions of their employees under a *respondeat superior* theory of liability. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). There instead must be "something more" to impose liability on a municipality, i.e., a demonstration that the constitutional violation occurred because of a municipal policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). That is, Rosenberg must sufficiently plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (cleaned up).

The Fifth Circuit recently emphasized the requirements for pleading *Monell* liability. In *Armstrong v. Ashley*, the Fifth Circuit affirmed dismissal where the plaintiff "pled custom or practice and pattern in a conclusory fashion without meaningful factual content" and pled a failure to train, supervise, and discipline theory in "general" and "wholly conclusory terms." 60 F.4th 262, 276-77 (5th Cir. 2023).

"Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." *Thomas v. Prevou,* 2008 WL 111293, *3 (S.D. Miss. 2008). The need for specific factual allegations where a litigant seeks redress based on a purportedly illegal policy or custom has been emphasized by courts. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

Under the first prong, Plaintiff has not pointed to any unconstitutional "policy statement, ordinance, regulation or decision that is officially adopted" by the City. *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). Nor has Rosenberg pointed to any custom.

Instead, Plaintiff alleges that the City had policies of (1) silencing dissent, (2) retaliation, (3) retaliatory conduct against critics and journalists, (4) discrediting Plaintiff's constitutionally protected speech, (5) suppressing Plaintiff's First Amendment Rights, (6) suppressing criticism, and (7) surveillance. *See generally* Doc. No. 3. As best discerned by the defendants, Plaintiff contends that pursuant to these policies, he suffered "violations of his constitutional rights, including deprivation of free speech, privacy, access to government, and equal protection under the law. *Id*. at p. 47. Rosenberg's allegations surrounding these policies amount to "a hodge-podge of unrelated incidents" that do not establish a custom, pattern, practice, nor indeliberate indifference on behalf of the City. *Vardeman v. City of Houston*, 55 F.4th 1045, 1052-53 (5th Cir. 2022).

"Boilerplate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Vess v. City of Dallas*, 2022 WL 625080, *5 (N.D. Tex. Mar. 3, 2022). Facts in support of municipal liability are lacking here.

The Fifth Circuit in *Grice* affirmed the dismissal of municipal liability claims, holding that, "We ascertain no constitutional violation for Grice's rote recitation of the municipal liability elements in the absence of specific facts indicating culpability and causation." *Grice v. Younger*, 2023 WL 2401584, *4 (5th Cir. Mar. 8, 2023). Plaintiff's argument relies solely on conclusory arguments that unofficial policies have led to all of Plaintiff's problems and therefore is entirely insufficient to plead that a municipal policy exists, much less led to the acts complained of in his complaint.

- 16 -

Nor does Plaintiff identify a widespread practice of similar instances that could give rise to an unofficial municipal custom. To prove a widespread practice or custom claim, Plaintiff must show that similar unconstitutional acts "have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Witchita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted). This claim requires "sufficiently numerous prior incidents," not "[i]solated instances[.]" *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

A pattern also requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (collecting cases). In other words, Plaintiff "must do more than describe the incident that gave rise to his injury." *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023) (citation omitted). Nothing close to a cognizable claim has been stated on these facts, as the gist of his lawsuit is about himself alone.

## VII.    Official Capacity Claims

Plaintiff's Complaint names Kenny Holloway, Jennifer Burgess, Patty Gaston, Ken Papania, Mike Impey, Robert Wilkinson, Kenny Williams, Bonnie Munro, and Ryan Lemaire in their individual and official capacities. The official capacity designations are improper. An official capacity claim is "actually a claim against the governmental entity itself." *Tuskan v. Jackson Cty., Miss.*, 2014 WL 3747606, *2 (S.D. Miss. July 29, 2014). When the government entity itself is named as a defendant, any official capacity claims are redundant and should be dismissed with prejudice. *Id.* The City is named here and has answered. Any official capacity claims against the remaining defendants should also be dismissed.

VIII.  **State Law Claims**

    a.  **Defendants are immune under the Mississippi Tort Claims Act.**

Although Plaintiff at times pleads that the individual defendants were acting within the course and scope of their employment, that does not mean that the City or official capacity defendants can be held liable for all claims. *See* Doc. No. 3 at p. 45. Importantly, the City is immune from all claims involving "conduct constitut[ing] fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations."  Miss. Code §§ 11-46-5(2).  Therefore, Plaintiff's defamation, defamation per se, and intentional infliction of emotional distress claims fail as a matter of law. *See Renfroe v. Parker*, 374 So. 3d 1234, 1241 (Miss. Ct. App. 2023) (intentional infliction of emotional distress). Because this Plaintiff alleges defamation and malicious conduct, Mississippi district courts have expressly concluded that cities may not be held liable under the MTCA for such torts. *E.g., id.*; *see also Ellis v. Lowndes Cnty.*, 2017 WL 6045440, at *12 (N.D. Miss. 2017) (reasoning that "malice is an element of false arrest" under Mississippi law and thus "the false arrest claim[] brought against the County Defendants must be dismissed" because it falls outside the limited waiver provided by the MTCA).

    b.  **Plaintiff's claims fail on the merits.**

Even if Plaintiff's state law claims could clear the MTCA's hurdles, each of these claims fails on the merits. Act. The defamation claims fail because, as explained in detail above, the alleged defamatory statements were not defamatory nor made with malice, and, instead, the statements were based upon fact or the Plaintiff's interactions with the defendants. The claim brought under the Mississippi Security of Communication Act fails as Plaintiff has failed to establish that he maintained a reasonable expectation of privacy in the public hallways of city hall.

Finally, to the extent that Plaintiff brings a claim of intentional infliction of emotional distress, or any other state law claim predicated on malicious and/or defamatory conduct, they are barred by sovereign immunity.

Significantly, what plaintiffs call their claims is irrelevant because parties are not allowed to "re-label tort suits as something else in order to avoid" dismissal. *See Alexander v. Taylor,* 928 So. 2d 992, 995 (Miss. Ct. App. 2006) (Southwick, J.). Instead, courts must focus on the substance of plaintiffs' allegations. *Id.* Thus, to the extent Plaintiff claims the conduct causing him harm was "malicious," and to the extent he brings an intentional infliction of emotional district claim, sovereign immunity applies. *See Jones v. Miss. Institutions of Higher Learning,* 264 So. 3d 9, 26-27 (Miss. Ct. App. 2018) (holding that any claim predicated on the allegation that defendant "intentionally ma[de] false charges of financial misconduct" was barred because "[w]e look to the substance of the claim, not its label").[9] Plaintiff attempts to consolidate all allegations and claims made in the Complaint as the predicate for his IIED claim, amounting to an improper relabeling of his claims. As to the individual defendants, they cannot be liable because they were acting within the course and scope of their employment as government officials throughout their dealings with Plaintiff. *See Cotton v. Paschall*, 782 So. 2d 1215, 1217 (Miss. 2001) (citing Miss. Code § 11-46-7) (Individual defendants can never be personally liable under Mississippi law "for acts or omissions within the course and scope of their employment.").

---

[9] In fact, courts repeatedly have found that claims for assault, battery, and intentional infliction of emotional distress fall outside what is allowable against a municipality under the MTCA. *E.g.*, *McBroom v. Payne*, 2010 WL 3942010, at *9 (S.D. Miss. 2010) (explaining that battery, assault, and intentional infliction of emotional distress claims "cannot be considered 'within the course and scope of employment' under the [MTCA]"); *Tyson v. Jones County, Miss.*, 2008 WL 4602788, at *7-8 (S.D. Miss. 2008) (finding that excessive force by an officer would constitute the criminal offense of assault and thus be considered as having occurred outside the course and scope of employment under the MTCA. Accordingly, at the very least, any purported state law claims for defamation and intentional infliction of emotional distress must fail as against the City and official capacity defendants.

### Defamation and Defamation per se[10]

Plaintiff alleges that the Defendants made numerous statements about him that constituted defamation or defamation per se. Doc. No. 3 at p. 43-44. For ease of reference, Defendants will first list the statements Plaintiff claims were defamatory. Defendants will then address the legal problems with Plaintiff's allegations.

1.  Defendant Patty Gaston:

    a.  Allegedly referred to Rosenberg as a "piece of shit" and accused him of writing misleading articles in a conversation with Rosenberg's past employer.

    b.  Referred to the Plaintiff as unprofessional, stated that he was attempting to mislead the public, and stated that she was "sick of his attitude."

2.  Defendant Jennifer Burgess

    a.  Allegedly stated that Plaintiff was arrested for domestic abuse against his wife and claimed that Plaintiff's wife required facial surgery following the abuse.

    b.  Burgess referred to the Plaintiff as a "self-professed con man," claiming he used "illusions" and manipulation to deceive others.

    c.  Stated there were "zero truths and facts" in anything Plaintiff wrote and that all of Plaintiff's claims about her were untrue.

    d.  Claimed that Plaintiff has a pattern of targeting women.

    e.  Texted Patty Gaston stating that Plaintiff "messed up because he threatened me… multiple times."

    f.  Alleged that Plaintiff was involved with "shady shell companies" on Facebook.

    g.  Stated on Facebook that Plaintiff "threatened to sue me", "spends an irrational amount of time mocking me and my faith," spreads "misleading and false information," and "inundates the city with Public Records Requests 'for all kinds of my stuff'" with "no rhyme or reason."

    h.  Stated "My advice… just steer clear of him… it's what I do."

---

[10] At page 45 of the complaint, Plaintiff alleges that "[s]everal statements were made by public officials in the course of their duties[.]" If this is accepted as true, Defendants may not be held personally liable for such statements under Mississippi law. *See Olivier v. Noxubee Cnty.*, 200 F.3d 815, 1999 WL 1095468, at *4 (5th Cir. 1999) (explaining that "the MTCA provides governmental employees with a 'protective environment' of immunity to escape liability for actions falling within the course and scope of employment").

    i.   Claimed that the alleged defamatory statements of another were "completely factual."

    j.   Characterized the Plaintiff as unstable and untrustworthy to Leigh Coleman, the then publisher of the Ocean Springs Weekly Record.

    k.   Stated the Plaintiff "needed to be talked off a ledge" and that she was "genuinely frightened" by the Plaintiff.

    l.   Texted Leigh Coleman stating "I will never respond to any requests for quotes from you or Eric Rosenberg. Any and all questions are to be sent to Ravin as you and he have been advised many times already. I also wanted it noted that I want Eric Rosenberg NO WHERE NEAR ME PHYSICALLY. My personal well being is more important to me, my husband and my son than any embarrassingly biased hit piece he may be working on."

3.  Kenny Holloway

    a.   Stated to Leigh Coleman that Plaintiff had "sucker punched" his wife.

    b.   Claimed that Plaintiff was "not a good guy" and that he had a felony charge or conviction for punching his wife and that she required facial surgery as a result.

    c.   Claimed that Plaintiff "repeatedly misrepresented facts, twisted narratives, and used bad-faith tactics to undermine fair discussion.

    d.   Stated that Plaintiff was involved in a "staged ambush designed to mislead voters."

4.  Bonnie Munro

    a.   Claimed that Plaintiff is "extremely insecure," has a temper, and "doesn't have the confidence to withstand too much integration beyond a gentle ego stroke."

    b.   Claimed that Plaintiff "is violent" and "beat his wife several times."

    c.   Claimed that Plaintiff contacted "a married woman after 10:00 P.M. on Facebook Messenger.

5.  Mike Impey

    a.   Stated that Plaintiff turned a nonpartisan candidate forum into an anti-incumbent event.

6.  Ken Papania

    a.   Told Plaintiff to "[d]on't come up here and slander another man."

7.  Kenny Williams

    a.  Stated that "They lie. Joe, Ellen, Julia, EBR. They just lie. They hate business. Which means they hate people."

8.  Robert Wilkinson

    a.  Stated "You know he beat his wife, right?"

    b.  Claimed that Plaintiff had a "brain problem and was violent.

    c.  Claimed that an article of the Plaintiff was "deliberately misleading."

    d.  Stated that Plaintiff "sucker punched" his wife.

9.  Carter Thompson

    a.  Stated that "He came in and wanted to do an interview with me right then and there and thank God Hannah caught him at the [door]."

10. Ryan Lemaire

    a.  Stated that Plaintiff's reporting was "100% not true."

Now for the legal deficiencies:

"A court can, at the motion-to-dismiss stage, conclude that [the] challenged speech could not reasonably be understood to communicate actual facts about a person." *Khodorkovskaya v. Gay*, 5 F.4th 80, 84 (D.C. Cir. 2021). Early dismissal is especially favored in cases of protected speech, where allowing unmeritorious claims to proceed would otherwise chill First Amendment discussion on matters of public concern. *See, e.g.*, *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1258 n.10 (S.D. Miss. 1988).

Provided that Plaintiff holds himself out as a "public figure," the First Amendment "protects authors and journalists who write about public figures by requiring a plaintiff to prove that the defamatory statements were made with ... 'actual malice.'" Doc. No. 3 at ¶70; *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 499 (1991). "In the First Amendment context, actual malice refers to the 'publication of a statement with knowledge of falsity or reckless disregard as to truth or falsity.'" *Bryant v. Rosenberg*, NO. 3:24-CV-260-KHJ-MTP, 2025 WL 906243 (S.D. Miss.

March 25, 2025) (quoting *Masson*, 501 U.S. at 511). To state a defamation claim as a public figure, Plaintiff must plausibly allege four elements: (1) a false and defamatory statement, (2) unprivileged publication, (3) actual malice, and (4) special harm (or actionability regardless of special harm). *Simmons L. Grp., P.A. v. Corp. Mgmt., Inc.*, 42 So. 3d 511, 517 (Miss. 2010).

"[T]he threshold question in a defamation action is whether the statement was defamatory because if the statement was not defamatory, little else matters." *Harris v. Lewis*, 755 So. 2d 1199, 1202 (Miss. Ct. App. 1999) (citing *Fulton v. Mississippi Publishers Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986)). "The defamation 'must be clear and unmistakable from the words themselves and not be the product of innuendo, speculation, or conjecture.'" *Samsel v. DeSoto Cnty. School District*, 242 F. Supp. 2d 496, 535 (N.D. Miss. March 17, 2017) (citing *Phillips Brothers, LP v. Winstead*, 129 So. 3d 906, 929 (Miss. 2014) (quoting *Baugh v. Baugh*, 512 So. 2d 1283, 1285 (Miss. 1987)).

"Mississippi law requires that a complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements." *Brune v. Takeda Pharmaceuticals U.S.A., Inc.*, No. 1:18-cv298-LG, 2019 WL 3323511, *8 (S.D. Miss. Jul. 24, 2019) (quoting *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007)). This means that the complaint must "set forth the statements, paraphrased or verbatim, that constituted [defamation]." *Chalk*, 980 So. 2d at 298; *see also Sacchetti v. Optiv Security, Inc.*, 2019 WL 5390611, at *8 (E.D. Tex. July 8, 2019) ("A court must assess the full context of the allegedly defamatory statement in order to determine if it may be the basis for a defamation claim.").

Plaintiff falls short of these initial requirements repeatedly, as many of the alleged defamatory statements fail to distinguish between what was stated and what the Plaintiff

interpreted it to mean. Plaintiff routinely refers only to speculation and conjecture as to what he believes the Defendants meant in their alleged statements. But a plaintiff's subjective thoughts about what was implied or what defendants were allegedly insinuating are irrelevant and insufficient to state a plausible claim.

A review of Plaintiff's defamation allegations reveals a pattern: the statements Plaintiff complains of amount to, at most, name calling and statements of opinion. While he may not like what was said about him, as Defendants likely do not like what he said about them, "these statements are generally not actionable in Mississippi. The Mississippi Supreme Court has recognized that 'name calling and verbal abuse are to be taken as statements of opinion, not fact, and therefore will not give rise to an action for libel.'" *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 493 (5th Cir. 2013) (quoting *Johnson v. Delta–Democrat Pub. Co*., 531 So.2d 811, 814 (Miss.1988) (collecting cases).

The point is that "nothing in life or our law guarantees a person immunity from occasional sharp criticism, nor should it . . . . [N]o person avoids a few linguistic slings and arrows, many demonstrably unfair." *Ferguson v. Watkins*, 448 So. 2d 271, 276 (Miss.1984). And that is especially so when a public figure like Plaintiff initiated the fight. Again, statements of opinion are actionable "only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion." *Id*.; *see also Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 688 (5th Cir.2000) ("[O]pinions, though strongly stated, ... based on truthful established fact, ... are not actionable under the First Amendment."); *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 564 (5th Cir.1997) ("Defamation law should not be used as a threat to force individuals to muzzle their truthful, reasonable opinions and beliefs.").

Regardless, the alleged defamatory statements Plaintiff is concerned with are based on truth or his interaction with Defendants, as he admits or acknowledges the underlying facts or events but then claims that Defendants' opinions of those facts or events are defamatory. For example, Plaintiff claims that Defendant Munro defamed him by stating that he contacted her, a married woman, on Facebook after 10:00 pm. Doc. No. 3 at ¶135. Yet Plaintiff admits to doing so, and he merely takes issue with what he believes Defendant Munro is implying by this statement. *Id*. This speculation cannot be the basis of a defamation claim. Plaintiff also heavily bases his defamation claims on the Defendants stating or implying that Plaintiff previously hit his wife. *Id*. at ¶76. In the same breath, Plaintiff admits that he was arrested for that same action. *Id*. at ¶¶176, 267. (He of course could not claim otherwise, since it is readily available online.) *See Undisputed Documents & Proof Behind E. Brian Rose aka Eric Brian Rosenberg aka EBR Mississippi*, available at https://vimeo.com/265500091 (last visited Aug. 31, 2025)).

Plaintiff also heavily bases his defamation claims on how the Defendants portray the facts or events. The language used in these statements is nothing more than loose figurative language, which is constitutionally protected. *See Perkins v. Littleton*, 270 So. 3d 208, 217-18 (Miss. Ct. App. 2018) ("the First Amendment protects 'imaginative expression' or 'rhetorical hyperbole'" and "no reasonable listener would have understood the radio ad's brief reference to [Plaintiff] as charging him with a crime" by using the word "conspiracy").

Lastly, Plaintiff has failed to allege that any of the complained of statements were made with actual malice, or with reckless disregard of the truth. Establishing reckless disregard requires showing that "the defendant actually had a high degree of awareness of probable falsity," or "in fact entertained serious doubts as to the truth of his publication." *Peter Scalamandre & Sons, Inc. v. Kaufman,* 113 F.3d 556, 561 (5th Cir. 1997*)* (cleaned up). Therefore, it is not enough to show

even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (cleaned up); *see also, e.g., J. Publ'g Co. v. McCullough*, 743 So. 2d 352, 365 (Miss. 1999). As established by the complaint, each of these alleged defamatory statements were made following interactions with Plaintiff, communication with Plaintiff, witnessing Plaintiff's actions, or interpreting police and/or court records that dealt with Plaintiff. There existed, then, a reasonable basis for each of these alleged statements to be made.

In sum, Plaintiff's defamation claims are premised on his public actions, public statements, reporting, interactions with the Municipal Defendants, and arrest, and the Municipal Defendants "had a right to characterize those publicly known facts caustically and unfairly." *Favre v. Sharpe*, 117 F.4th 342, 348 (5th Cir. 2024). Plaintiff has alleged only "'strongly stated' opinions 'based on truthful established fact[s]," and therefore, his claims of defamation fail. *Id*. (quoting *Trout Point Lodge*, 729 F.3d at 493).

## **Intentional Infliction of Emotional Distress**

As with defamation, Plaintiff appears to be trying to sue both the City and individual defendants for IIED. But the MTCA does not permit that. As Judge Jordan has explained, a plaintiff cannot "have the best of both worlds[.]" *See Hawkins v. City of Lexington*, 2021 WL 5236017, *6-7 (S.D. Miss. 2021). The claim either has to be against individuals or the City, but it cannot be both.

As an initial matter, IIED "is a 'gap-filler' tort reserved for 'those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim

has no other recognized theory of redress." *Stelly v. Duriso*, 982 F.3d 403, 408 (5th Cir. 2020)

(quoting *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)).

> To prevail on a claim for intentional infliction of emotional distress, Rosenberg must prove:
>
> [(1)] [t]he defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; [(2)] the defendant's acts are ones "which evoke outrage or revulsion in civilized society"; [(3)] the acts were directed at, or intended to cause harm to, the plaintiff; [(4)] the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and [(5)] "such resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170-71 (¶41) (Miss. Ct. App. 2021)

(quoting *Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403 (¶16) (Miss. Ct. App. 2013)).

For Plaintiff's claim to be successful, he must plausibly allege conduct on behalf of the Municipal Defendants that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Croft v. Grand Casino Tunica Inc.*, 910 So. 2d 66, 75 (¶31) (Miss. Ct. App. 2005). "Liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" *Herbert v. Herbert*, 374 So.3d 562, 571 (Miss. Ct. App. 2023) (quoting *Id.*) (citation omitted). Insulting statements may be "despicable and terribly insulting," however "they are still merely insults." *Spiers v. Oak Grove Credit, LLC*, 328 So.3d 645, 654 (Miss. 2021); *see also Rollins v. Kiffin*, 2024 WL 386925, No. 3:23-cv-0356-MPM-RP (N.D. Miss. Jan. 31, 2024) ("Although Kiffin's conduct in the meetings was certainly offensive and imprudent, it is more akin to immature insults and indignities than to behavior going 'beyond all possible bounds of decency.'").[11]

---

[11]    *See also Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CV-180, 2013 WL 3197641, at *8 (W.D. Tex. June 21, 2013), (explaining accusations of criminal conduct do not rise to the level of extreme and outrageous).

Plaintiff has failed the "tall order" of meeting the requisites of an intentional infliction of emotional distress claim. *Speed v. Scott,* 787 So.2d 626, 630 (¶19) (Miss. 2001). None of the statements or actions allegedly belonging to Defendants rise to the level of actionable intentional infliction of emotional distress.

### Mississippi Security of Communications Act

Plaintiff alleges that Defendants the City, Patty Gaston, and Kenny Holloway violated Miss. Code Ann. §§ 41-29-531 – 41-29-537, the Mississippi Security of Communications Act through installing and using audio surveillance inside of Ocean Springs City Hall.

Plaintiff does not allege that the City wiretapped his phone, as is the common claim when this statute is discussed, rather, he instead claims that the City is liable for intercepting his oral communications. However, Section 41-29-501 defines "oral communication" as "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." As fully discussed herein, Plaintiff had no reasonable expectation of privacy in the public hallways of Ocean Springs City Hall, and thus, his claim fails.

### CONCLUSION

For all of these reasons, this case should be dismissed. Plaintiff Rosenberg has no viable claims under federal or state law.

THIS, the 3rd day of September, 2025.

RESPECTFULLY SUBMITTED,

PHELPS DUNBAR LLP

BY:    */s/ Cannon A. Funderburk*
G. Todd Butler (MSB# 102907)
Mallory K. Bland (MSB# 105665)
1905 Community Bank Way, Suite 200
P.O. Box 320159
Flowood, Mississippi 39232
Telephone: (601) 352-2300
Telecopier: (601) 360-9777
Email: todd.butler@phelps.com

and

Cannon A. Funderburk (MSB# 106293)
105 E. Main Street, Suite 201
Tupelo, Mississippi 38804
P. O. Box 1220
Tupelo, Mississippi 38802-1220
Telephone: (662) 842-7907
Telecopier: (662) 842-3873
Email: cannon.funderburk@phelps.com

- 29 -

PD.50703968.1

**<u>CERTIFICATE OF SERVICE</u>**

This will certify that the undersigned has this day filed the above and foregoing document with the Clerk of this Court using the CM/ECF filing system which sent notification of same to all counsel of record.

DATED, this the 3rd Day of September, 2025.

/s/Cannon A. Funderburk
Cannon A. Funderburk

PD.50703968.1