## Transcript of October 14, 2025 Conference Between Plaintiff Eric Brian Rosenberg and Defense Counsel Todd Butler

### (Audio File Available Upon Court's Request)

1. **Rosenberg:** Hey, Mr. Butler, how you doing?
2. **Butler:** Yeah, doing well. Sorry about my delay. I got stuck at a lunch meeting that went far longer than I wanted it to or planned for it to.
3. **Rosenberg:** That's okay.
4. **Butler:** So, I just wanted to have the call and, you know, satisfy the requirement. I mean, I think we're probably at an impasse on where we are, but, you know, I don't know if you see it differently, but, I mean, I don't really, I don't know what room there is to budge here.
5. **Rosenberg:** Well, I think my position is simple and pretty narrow. I'll, I'm offering, I'll have no communication with any represented city employees that are represented city officials or any personnel about claims, defenses, discovery, witnesses, settlement, or non-public case info outside of council. And I'll comply with all the rules...
6. **Butler:** The problem with that, respectfully, is that, I mean, what you're saying, you know, you won't have any, any, contact about claims, your claims in the case are that you're being retaliated against in your inquiries and how they respond to you.
7. **Rosenberg:** That's not a good synopsis of what my claims are. Your clients can easily respond to questions with no comment or simply not respond at all.
8. **Butler:** Let's start there then. What do you consider your claims to be then?
9. **Rosenberg:** Well, I'm not here to argue the merits of the case. We have...
10. **Butler:** But that's the problem.
11. **Rosenberg:** Well, I don't think it's a problem...
12. **Butler:** The subject matter is we don't agree on what's related to the case.
13. **Rosenberg:** Well, I think you're casting a wide net. And, you know, something ironic that happened just minutes before you called. the city's PIO just emailed me and other outlets a press release and in your proposal would allow the city and don't get me wrong I appreciate receiving the press releases again but your proposal would allow the city to push news to me but forbid me from asking basic non-litigation follow-up questions...
14. **Butler:** (laughs) The word allow is a weird word to use because you requested it. And that's why I've made sure that you are owed whatever was sent. If you don't want to be on there, we'll...
15. **Rosenberg:** I do want to be on it...
16. **Butler:** It's not about allowing it. Nobody's allowing it. You requested it.
17. **Rosenberg:** I did request it, yes, because I'm media and I was put on the media list and only taken off after certain events. And I appreciate being put back on there. You're casting a wide net.
18. **Butler:** And that's what I...
19. **Rosenberg:** Mr. Butler, do you want this to be a call where you talk and I just listen, or can I speak as well? I mean, I'm trying to be cordial, but you keep talking over me and interrupting me. Every time you ask a question, I respond...
20. **Butler:** Go right ahead.
21. **Rosenberg:** So you are casting this wide net saying that non-litigation based questions, media inquiries are somehow linked to the lawsuit. In your email to me earlier today, you mentioned

that my supplemental claim somehow linked it all. That's preserved retaliation evidence. It doesn't turn public domain questions into merit communications. If you can do me this and I asked you in my email, but you didn't respond to it, can you cite any email that was sent to the PIO from me that was somehow abusive, somehow litigation based?
22. **Butler:** Everything that you have sent is litigation-based. I mean, what do you mean by non-litigation-based inquiry? There's a lawsuit consists of legal claims supported by factual underpinnings and like your whole legal claim is First Amendment retaliation. And then the facts that you're alleging to support that is how these public officials interact with you.
23. **Rosenberg:** So you're saying that every time I exercise...
24. **Butler:** Can I finish talking like you asked for me to...
25. **Rosenberg:** I thought you were done.
26. **Butler:** I mean, all of that, I mean, that... how they respond to you, what your lawsuit is all about. And so every time that you send a email and you don't like the response that you get, and you file a motion to supplement and say that it is viewpoint discrimination or however you phrase it, I mean, it's all related to your claims. And so that was my point the other day, you know, on the call with the judge. Of course you have constitutional rights, but they are not coextensive with everyone else's in other settings who haven't done the same things you've done. It's no different than somebody who accepts public employment. No, you don't surrender all your First Amendment rights, nor do they, but there are certain limitations that come along with making that choice.
27. **Rosenberg:** When you say, haven't done the things that you've done, what are you asserting?
28. **Butler:** Being a litigant. When you decide to be a litigant, there are certain rules of court that come along with being a litigant, and one of those rules has to do with corresponding with people who are represented by counsel. That is what I'm talking about.
29. **Rosenberg:** So, none of my press inquiries were merit-based or litigation-based. Rule 15d lets me preserve later facts. It doesn't re-label all of my future speech as merit communication. Evidence of retaliation isn't the same as talking about claims, defenses, discovery, witnesses, settlement, or non-public case information. Your clients are free to not answer my media inquiries or respond as no comment. I have specifically addressed any of your worries that they could be litigation-based by saying, I will CC you and I'll contact with the PIO, which you seem to be against.
30. **Butler:** I'm actually not. I mean, that was the compromise that I gave you, is that if you're going to make direct contact with elected officials or people that are representative of the city, you can make it all you want. They can respond or not, but I have to know about it.
31. **Rosenberg:** That's exactly what I have...
32. **Butler:** And what you're not wanting to do, we are defining what is related to litigation very differently. And that's where the disconnect is. It's not about I told you I didn't want you to CC me or any of that. That's not what I'm saying.
33. **Rosenberg:** Okay, so now I think you're saying two different and completely opposite things at the same time. You're now saying that it's okay to contact city officials with media-related questions, but on the other hand, you're saying all of my media-related questions are litigation-based.
34. **Butler:** Why is that? Do you think that's contradictory?

35. **Rosenberg:** Well, you just told me... yes, I absolutely do. You just told me that you don't have a problem with me CCing you in my media inquiries, but then you're telling me, on the other hand, I can't make the media inquiries because you're labeling them as litigation-based.
36. **Butler:** No, that's not what I said. I said my compromise was that if you're going to have direct contact, if you're going to make your media inquiries, that you have to notify counsel or the other side.
37. **Rosenberg:** That was in every single one of my proposals.
38. **Butler:** No, but you're saying that you don't have to do it with all communications. You're saying only things that you deem to be litigation.
39. **Rosenberg:** If a person who happens to be either an elected official or somebody with the city wants to hang out and go play pickleball, like one alderman asked me to do just recently, or go discuss a water main break at the local coffee shop, like one recently has done, then are you suggesting that I call you and come to play pickleball with us, or come to the coffee house, or if we have a social encounter with someone who works for Public Works, a $17 an hour employee that I have to call you before we go to the bar?
40. **Butler:** I'll take those in order. The pickleball, no, I don't want to play pickleball with you, but if you're talking about city business, then yes, I have to know about it. That is my response.
41. **Rosenberg:** So, any time a city-related person would call me, with information that they want to provide to me...
42. **Butler:** No, no, no, I didn't say call you. I said we're talking about your direct contact with a represented party. That's what we're talking about. Your actions, not theirs.
43. **Rosenberg:** I have no problem CCing you in direct contact that I have with anybody city-related, for city related business that I am using to gather for news gathering purposes. I have no problem with that. And I think that I have made that clear in, in several emails that I sent to you. So I guess we're, we're in agreement.
44. **Butler:** Well, then, then you should go back and look at my email. That, that is what my email proposed.
45. **Rosenberg:** Okay, so in the instance that I do have coffee with somebody or see somebody out socially and we start discussing something about the city, should I call you and have you come down and take an Uber? That's what I'm trying to wrap my head around.
46. **Butler:** I'm saying just like an attorney would be required to give the represented party's council notice, you have to give me notice. So, the thought is that you should never be talking about city issues with the represented party without giving advance notice to the other side of the council. I mean, that's generally what the rules are.
47. **Rosenberg:** So, I think that what you're creating is a trap door for me because, you know, we live in a small town and people come to me a lot with city information. Some of those people, the majority of those people are either city officials or people that work for the city. And you're putting me in a situation where I cannot newsgather. If I show up in a crime scene... just a second, please let me finish this. If I show up at a crime scene and interview the chief of police, I'm not allowed to do that for breaking news situations unless I first coordinate with you. And that puts me at a disadvantage in the news world. And interviewing the chief of police for a murder scene absolutely has nothing to do with my case.
48. **Butler:** Okay, well then I think you should make that argument when I file my motion for protective order.

49. **Rosenberg:** Sounds good. I appreciate your call.
50. **Butler:** Alright. Take care.