# GCWIRE.COM

# Attorney General Asked to Weigh in on Ocean Springs City Attorney Controversy

AUTHOR: E. Brian Rose

September 24, 2025

EX. B



The Ocean Springs Board of Aldermen meeting at City Hall on September 16, 2025.

**OCEAN SPRINGS, MS** — Two competing letters from Ocean Springs officials are now before the Mississippi Attorney General — and they ask very different questions about City Attorney David Harris's contract.

The dueling requests stem from accusations that Harris misled aldermen about state law to secure his firm a lucrative, recurring annual deal.

One letter, from Mayor Bobby Cox, frames the issue so narrowly it could shield Harris from criticism. The other, from Alderman Shannon Pfeiffer, asks directly about the very claims aldermen say Harris misrepresented.

## How the Controversy Began

David Harris's law firm was named Interim City Attorney in June. It was publicly stated that the city would actively look for a permanent city attorney in the weeks to come.

But at the September 2 Board of Aldermen meeting, Harris sprung a situation on the aldermen that resulted in the Board feeling they had no choice but to approve a new contract presented by Harris just days before.

Most notably, he told them:

- His interim appointment as city attorney was days from expiring because the law would not allow the city to extend it beyond 90 days.
- The law requires the city to have a city attorney at all times.
- His new contract had to be for a one-year term as a matter of law.

**But each of those claims appears to contradict the very Mississippi laws he cited.**

The 90-day cap applies only to offices explicitly required by statute, such as tax collector and police chief. A completely different statute covers city attorney appointments and makes the position optional, nowhere stating a city to must enter into a one-year contract.

Alderman Rob Blackman specifically asked Harris if the Board could continue with a month-to-month contract while the city searches for a permanent replacement. Harris responded the law requires them to sign a one year deal.

By presenting the two laws as a legal ultimatum, Harris left the Board little room. The result was a one-year deal for his firm, potentially worth hundreds of thousands of dollars — a contract several aldermen now say was built on faulty ground.

Aldermen Pfeiffer, Karen Stennis, and Matthew Hinton told *GC Wire* that, after reviewing the statutes Harris cited, they _____ into voting yes. Before Harris's presentation and the vote, he was working under a month-to-month arrangement while the city searched for a permanent attorney.

## Two AG Letters, Two Very Different Questions

At the September 16 Board of Aldermen meeting, Mayor Bobby Cox praised Harris as "honest" and "professional," despite quietly asking the Mississippi Attorney General's office to address whether or not Harris told the truth.

"I just met Mr. Harris 90 days ago and he stepped in here and has been very professional, very honest, and has put up with a lot of accusations," Cox said. "I'm gonna tell you, I couldn't ask for anything more from Mr. Harris than the job he's done for us."

His remarks were met with applause from city staff, signaling Harris has backing inside City Hall even as aldermen raise doubts.

During that same meeting, Alderman Hinton acknowledged the mayor was "reaching out to get an AG opinion about what was told to us."

*GC Wire* has now obtained two competing letters sent to the Attorney General's office: one from Cox and one from Pfeiffer. The difference is striking.

Cox's cover letter **framed the issue narrowly and asked one question:**

*"Does the appointment of the city attorney, who was formally serving as the interim city attorney, on an annual basis comply with Miss. Code 21-15-25?"*

The problem with this framing is no one had ever suggested the city *lacked* authority to enter into a one-year contract. The real question — whether Harris misled aldermen into believing the long-term contract was legally *required* – was omitted from Cox's letter. By reframing the issue into a question no one had asked, Cox risked producing an opinion that clears Harris on a technicality while dodging the real allegations.

Cox's cover letter also omitted the question as to whether a state law that addresses a 90 day cap on interim positions applies to the city attorney. It does not, but Cox included a passage in his letter stating as a matter of fact that it does:

"Because the interim period was coming to an end on September 17, 2025, pursuant to Miss. Code 21-45-41, the City appointed the interim city attorney as the regular city attorney under a one-year contract."

Cox cited "Miss. Code 21-45-41" — a statute that does not exist.

Miss. Code 21-15-41 is the statute that addresses the 90 day cap on interim positions, but only for positions required by state law. City attorney is not one of those positions.

Cox's citation is not only wrong in number but misleading in substance. The position of city attorney is addressed specifically in its own statute, stating: the position is optional and that cities may sign up to a one year contract, they may hire for less time, and/or even on an as needed basis.

Attorney General opinions rarely address actions of the past and focus mainly on interpretation of the law, so it remains to be seen how they will address the angle of the questions raised by Cox.

**By contrast, Pfeiffer's submission asked the very questions Harris's critics have been raising:**

*"Recently, questions have arisen as to whether § 21-15-41, which limits compensation and validity of service in an interim or hold-over capacity for more than 90 days, applies to City Attorneys. Additionally, there is uncertainty about whether municipalities are permitted to engage a City Attorney on a temporary, project-based, or month-to-month basis as opposed to an annual contract."*

Pfeiffer's questions address the precise claims Harris used to pressure aldermen into approving his contract.

## Contradictions in Cox's Submission

AG Opinion requests are two-part: the cover letter and a standardized form.

While Cox's cover letter only asks the single question of whether the city is permitted to sign a one year contract with a city attorney, the form poses the two actual questions raised by aldermen and the public: whether the 90 day interim cap applies and whether the city was required to sign a one year contract.

But because AG opinions often reference the cover letter, Cox's narrow framing could yield a clean bill of health on a question no one disputed, while Pfeiffer's cover letter forces the Attorney General to confront the alleged misstatements that created the controversy.

## A Pattern of Problems

The contract fight is not the only issue to dog Harris since his arrival:

- **The phantom vote.** On July 1, the first day of the new board, minutes prepared under Harris's supervision included a motion, a second, and a unanimous 7–0 vote to keep Robert Wilkinson as city attorney in six lawsuits. Aldermen later said no such vote occurred. The Board voted unanimously to strike Harris's phantom vote from the official record.
- **The $10,000 fines threat.** Harris told aldermen they could face fines of up to $10,000 and even removal from office if they revealed executive session discussions. No such law exists. AG opinions have long held that while minutes are the official record, aldermen are not barred from informally disclosing what was said to residents or even the media.
- **The media warning.** After *GC Wire* first reported the contract controversy, Harris chastised aldermen for speaking to reporters. Instead, he reportedly told them to "say it to my face," adding that he "will fight" and that he is "dang good at fighting."

## What Can Residents Expect Now?

At the September 16 meeting, Cox pointed to new Requests for Proposals (RFPs) as proof the city is moving forward transparently. What went unsaid is that Harris now holds a one-year contract. For any new applicant to be considered, the Board would have to terminate that deal under its 30-day clause — and even then, the mayor could veto.

Removing Harris would require four votes from the Board, and five to override a mayoral veto. With Cox staking his own reputation on Harris's "honesty," the odds are stacked against the aldermen who say they were misled.

For now, the city awaits Jackson's response. But the bigger question is no longer whether Ocean Springs *can* sign a one-year contract with its city attorney. It's whether officials will admit their own attorney shaped the law in a way that benefitted him most.

**Relevant Mississippi Statutes**