## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERIC BRIAN ROSENBERG** | § | **PLAINTIFF** |
| ***also known as E. Brian Rose*** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:25-cv-182-HSO-BWR** |
| | § | |
| | § | |
| **CITY OF OCEAN SPRINGS,** | § | |
| **MISSISSIPPI, et al.** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION [33] TO SUPPLEMENT AND MOTIONS [52], [59] FOR JUDICIAL NOTICE; GRANTING PLAINTIFF'S MOTION [43] TO STRIKE; GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION [27] TO DISMISS; DISMISSING PLAINTIFF'S FEDERAL CLAIMS; AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

Pro se Plaintiff Eric Brian Rosenberg ("Plaintiff" or "Rosenberg") works as a journalist in the City of Ocean Springs, Mississippi, and he alleges violations of his federal constitutional rights under the First, Fourth, and Fourteenth Amendments. *See* Am. Compl. [3] at 2, 4, 40-43, 45. He also raises state-law claims. *See id.* at 2, 41-47. Defendants seek dismissal of Plaintiff's Amended Complaint [3], *see* Mot. [27], which he seeks to supplement under Federal Rule of Civil Procedure 15(d), *see* Mot. [33]. Plaintiff also seeks to strike or disregard extra-record materials relied upon by Defendants in their Motion [27] to Dismiss, *see* Mot. [43], and he asks the Court to take judicial notice of certain public records under Federal Rule of Evidence 201, *see* Mot. [52]; Mot. [59]

Plaintiff's Motions [33] to Supplement and [52], [59] for Judicial Notice should be denied, but his Motion [43] to Strike should be granted. Defendants'

Motion [27] to Dismiss should be granted in part, to the extent it seeks dismissal of Plaintiff's federal claims, and denied without prejudice, to the extent it seeks dismissal of the remaining state-law claims. The Court will decline to exercise supplemental jurisdiction over the state-law claims and will dismiss those claims without prejudice.

## I. BACKGROUND

According to Rosenberg, "this cases arises from a pattern of retaliatory conduct, defamation, and obstruction by the Defendants in response to Plaintiff's exercise of his First Amendment rights as a journalist." Am. Compl. [3] at 1. His "claims arise from a coordinated and deliberate campaign of retaliation by Defendants, acting under color of law, designed to punish Plaintiff for his constitutionally protected activities as a journalist." *Id.* at 2. Rosenberg claims that Defendants' actions have caused "significant harm to [his] reputation, career, and emotional well-being . . . ." *Id.*

Rosenberg filed his Complaint [1] on June 11, 2025, followed by an Amended Complaint [3] on June 17, 2025, naming as Defendants the City of Ocean Springs, Mississippi (the "City"); Mayor Kenny Holloway ("Holloway"); Jennifer Burgess ("Burgess"); Patty Gaston ("Gaston"); Ken Papania ("Papania"); Mike Impey ("Impey"); Robert Wilkinson ("Wilkinson"); Kenny Williams ("Williams"); Bonnie Munro ("Munro"); and Ryan Lemaire ("Lemaire"), in their official and individual capacities; and John/Jane Does 1-10. *See* Compl. [1]; Am. Compl. [3]. The Amended Complaint [3] alleges that Rosenberg is "a journalist with decades of experience" who reports "on matters of significant concern," Am. Compl. [3] at 6-7,

and it claims that the City and its officials, including Holloway, Burgess, Gaston, Papania, Impey, Wilkinson, Williams, and Munro, have purportedly "engaged in a pattern of retaliatory and defamatory conduct aimed at silencing Plaintiff's reporting and chilling his exercise of constitutionally protected activities," *id.* at 7.

The Amended Complaint [3] advances claims for retaliation in violation of the First Amendment (Count I); denial of equal protection in violation of the Fourteenth Amendment (Count II); violation of the Mississippi Public Records Act, Miss. Code Ann. § 25-61-1, et seq. (Count III); audio surveillance in violation of the Fourth Amendment (Count IV); defamation (Count V); defamation per se (Count VI); intentional infliction of emotional distress (Count VII); municipal liability against the City under 42 U.S.C. § 1983 (Count VIII); and violation of the Mississippi Security of Communications Act, Miss. Code Ann. §§ 41-29-531 to -537 (Count IX). *See id.* at 40-47.

Defendants' Motion [27] to Dismiss argues that "Rosenberg did not suffer a constitutional violation, the standards of municipal liability have not been met, Rosenberg cannot overcome qualified immunity, and the state law claims are barred by MTCA immunity and/or otherwise fail to state a claim." Mot. [27] at 1; *see also* Mem. [28] at 5-28. Rosenberg opposes the Motion [27], *see* Resp. [31]; Mem. [32], but "[i]f the Court seeks additional particulars (e.g., exemplar dates/quotes . . . )," he seeks "leave under Rule 15(a)(2) to amend within 14 days," Mem. [32] at 7 (emphasis removed).

When he filed his opposition to Defendants' Motion [27], Rosenberg also filed a Motion [33] for Leave to File Supplemental Complaint under Rule 15(d), alleging

"**post-filing** events that arise from the **same course of conduct** (no new causes of action)."  Mot. [33] at 1 (emphasis in original).  Defendants respond that Rosenberg's Motion [33] should be denied because "the proposed supplemental allegations suffer from the same deficiencies as those comprising the operative Complaint."  Resp. [48] at 1.

After briefing on the Motion [27] to Dismiss was complete, Rosenberg filed a Motion [43] to Strike or disregard extra-record materials cited by Defendants, specifically "hyperlinks and quotations from Plaintiff's website . . . and social-media posts offered for the truth of the matters asserted (e.g., to prove continued publishing/no chill, or that Plaintiff 'acknowledged' the City Hall recording 'had nothing to do with him')."  Mot. [43] at 1.  Defendants counter that these documents can be considered because they were attached to the Motion [27] to Dismiss, were referred to in the Amended Complaint [3], and are arguably central, or at least related, to Plaintiff's claims.  *See* Resp. [54] at 1-2.

Rosenberg next filed a Motion [52] for Judicial Notice of Public Records under Federal Rule of Evidence 201, specifically "a certified excerpt from the February 4, 2025 minutes of the Ocean Springs Board of Aldermen" and "the City's October 27, 2025 response to Plaintiff's public-records request and unanswered reply."  Mot. [52] at 1.   According to Rosenberg, these records show the City's differing treatment of comparable communications from him and from a third-party.  *See id.* at 2; Reply [58] at 1-3.

Rosenberg's second Motion [59] for Judicial Notice of Ethics Commission Answer pertains to the City's November 12, 2025, filing with the Mississippi Ethics

Commission, which he contends "provides further direct, unfiltered evidence of motive, animus, and ongoing government retaliation against Plaintiff for engaging in protected First Amendment activity."  Mot. [59] at 1.  The City was answering Rosenberg's ethics complaint concerning its "refusal to provide the final settlement agreement for [a separate] federal case," *id.*, and purportedly "launch[ed] a multipage attack on [Rosenberg's] protected activities," *id.* at 2, "due solely to the content and viewpoint of his speech," *id.*  Rosenberg asks the Court to take notice under Rule 201(b)(2) of the "existence and contents of the City's Ethics Answer" and the judgment entered in the earlier, separate civil case, *id.* at 4, for "the limited of purpose of understanding Defendants' motive, retaliatory government conduct, viewpoint-based hostility toward [sic] Plaintiff's speech," *id.* at 5; *see* Mem. [60]; Reply [62].  Defendants argue that both Motions [52], [59] are inappropriate attempts to supplement the operative complaint, but even if considered, "the document at issue concerns unrelated issues separate from the underlying case." Resp. [61] at 1.

## II.  DISCUSSION

### A.    Plaintiff's Motion [33] for Leave to File Supplemental Complaint

Rule 15(d) provides that

> [o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). "While the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide." *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). "Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances." *Id.* (emphasis in original).

In deciding whether to permit supplementation under Rule 15(d), a court can consider whether the additional information is of substance and whether the supplemented pleadings would remain futile. *See, e.g., Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012); *Connor v. Castro*, 719 F. App'x 376, 380 (5th Cir. 2018); *Triplett v. Banks*, No. 19-60770, 2021 WL 5444751, at *2 (5th Cir. Nov. 19, 2021) (citing *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983)). If a proposed supplemental complaint merely seeks "to reurge and/or reframe matters already before the district court, the district court [does] not abuse its discretion in denying the Rule 15(d) motion." *Back v. Texas Dep't of Crim. Just. Corr. Institutions Div.*, 716 F. App'x 255, 257 (5th Cir. 2017).

Because, as the Court will discuss, Rosenberg's Amended Complaint [3] fails to state any federal claim and the proposed supplementation would not change that result, the request to supplement is futile, and Rosenberg's Motion [33] should be denied. *See* Fed. R. Civ. P. 15(d); *Haggard*, 668 F.3d at 202; *Connor*, 719 F. App'x at 380; *Triplett*, 2021 WL 5444751, at *2.

B.    Plaintiff's Motion [43] to Strike

Rosenberg seeks to strike or disregard extra-record materials cited by Defendants in their Motion [27] to Dismiss, specifically "hyperlinks and quotations

6

from Plaintiff's website . . . and social-media posts offered for the truth of the matters asserted (e.g., to prove continued publishing/no chill, or that Plaintiff 'acknowledged' the City Hall recording 'had nothing to do with him')." Mot. [43] at 1. Defendants maintain that these documents can be considered because they were attached to the Motion [27] to Dismiss, referred to in the Amended Complaint [3], and are arguably central, or at least related, to the claims. *See* Resp. [54] at 1-2.

In resolving a Rule 12(b)(6) motion, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Rule 12(d) provides that, if matters outside the pleadings are presented and not excluded by the court, "the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

Defendants cite a Uniform Resource Locator ("URL") for several websites last visited on August 31, 2025: (1) a Ballotpedia URL concerning Rosenberg's run for a congressional seat, *see* Mem. [28] at 1 n.1; (2) a WLOX news article URL regarding the election, *see id.*; (3) Plaintiff's own website, GCWIRE.COM, *see id.* at 2, 5, 6 n.4, 6 n.5; Reply [40] at 4; and (4) the URL of a Facebook post by Rosenberg, *see id.* at 3, 6. Defendants did not attach printouts these items, and they have not shown that

all of them were referred to in the Amended Complaint [3].  *See* Mem. [28]; Reply
[40].  The pleadings do not reference a Ballotpedia website, Rosenberg's campaign,
or the congressional election.  *See* Am. Compl. [3].  While the Amended Complaint
[3] does reference a WLOX report, the one to which it refers concerns Rosenberg's
reporting of the City's alleged "purchase of access to a computer operating system
with multiple vehicle tracking capabilities," and Lemaire purportedly repeating
false claims that Rosenberg's reporting on the purchase was "100% not true."  *Id.* at
27.  The election article Defendants reference is different.  *See* Mem. [28] at 1 n.1.

Nor does the Amended Complaint [3] cite Plaintiff's website or any posts on
it.  *See* Am. Compl. [3].  The only references in the pleadings to a GC Wire
publication are that Holloway purportedly attached the publication in a Facebook
post to try to publicly discredit it and retaliate against Plaintiff for his prior
reporting.  *See id.* at 18.  The Amended Complaint [3] refers to Facebook posts, but
there is no reference to Rosenberg's August 15, 2025, "Case Update" post that
Defendants reference in their Motion [27].  *See id.*

Because Defendants have not shown that the websites cited in their briefs
were referred to in Plaintiff's Amended Complaint [3] and are central to his claims,
they will not be considered by the Court, and Rosenberg's Motion [43] to Strike
should be granted.  *See* Fed. R. Civ. P. 12(d); *Causey*, 394 F.3d at 288.

C.    Rosenberg's Motions [52], [59] for Judicial Notice

Rosenberg asks the Court to take judicial notice of "a certified excerpt from
the February 4, 2025 minutes of the Ocean Springs Board of Aldermen" and "the
City's October 27, 2025 response to Plaintiff's public-records request and

unanswered reply." Mot. [52] at 1.    According to Rosenberg, these records reveal the City's differing treatment of comparable communications from him and from a third-party, which he contends is relevant. *See id.* at 2; Reply [58] at 1-3. Rosenberg also seeks judicial notice of the Ethics Commission Answer, which he contends "provides further direct, unfiltered evidence of motive, animus, and ongoing government retaliation against Plaintiff for engaging in protected First Amendment activity." Mot. [59] at 1.

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1)    is generally known within the trial court's territorial jurisdiction; or
> (2)    can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b).  In deciding a Rule 12(b)(6) motion, a court may take judicial notice of matters of public record directly relevant to the issue at hand. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).  Consideration of such matters of public record does not require converting a motion to one for summary judgment. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  While a court may be able to take judicial notice of the existence of certain public documents, if the facts contained within the documents are the subject of reasonable dispute, judicial notice is not appropriate and should be denied. *See Lewis v. Danos*, 83 F.4th 948, 954 (5th Cir. 2023).

Although the Court can take notice of the existence of the documents at issue here, Plaintiff has not shown how the facts contained within them are not subject to reasonable dispute, nor how any adjudicative fact is directly relevant to the issues

at hand.  *See* Fed. R. Evid. 201; *Lewis*, 83 F.4th at 954; *Funk*, 631 F.3d at 783;

*Norris*, 500 F.3d at 461 n.9.  But even if the Court did take judicial notice of these

items, the result would not change, as the pleadings nevertheless fail to state a

federal claim.  *See* Am. Compl. [3]; Fed. R. Civ. P. 12(b)(6).  Rosenberg's Motions

[52], [59] should be denied.

D.    Defendants' Motion [27] to Dismiss

1.    Relevant Legal Authority

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  A court must accept all well-pleaded facts as true and

view them in the light most favorable to the plaintiff.  *PHI Grp., Inc. v. Zurich Am.*

*Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023).  "A court may dismiss a complaint as a

matter of law when the plaintiff fails 'to state a claim upon which relief can be

granted.'"  *Vardeman v. City of Houston*, 55 F.4th 1045, 1049-50 (5th Cir. 2022)

(quoting Fed. R. Civ. P. 12(b)(6)).

Pro se pleadings are held "to less stringent standards than formal pleadings

drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  "[B]ut pro se

plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("Even a liberally construed *pro se* civil rights complaint, however, must set forth facts giving rise to a claim on which relief may be granted."). And "regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see Nix v. Major League Baseball*, 62 F.4th 920, 928 (5th Cir.), *cert. denied*, 144 S. Ct. 165 (2023) (quotation omitted).

2.   Section 1983 and Qualified Immunity

Plaintiff's federal claims include claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment (Count I); denial of equal protection in violation of the Fourteenth Amendment (Count II); audio surveillance in violation of the Fourth Amendment (Count IV); and municipal liability on the part of the City under 42 U.S.C. § 1983 (Count VIII).  *See* Am. Compl. [3] at 40-47.  "Section 1983 enables an individual to recover damages from a state or local official for the deprivation of a constitutional right," *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561 (2024), but qualified immunity protects governmental officials from individual liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010).  Where, as here, an individual defendant invokes qualified immunity, "the court has an obligation to carefully scrutinize the complaint before

subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (quotations and alterations omitted). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Good*, 601 F.3d at 400 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity shields officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To allege a constitutional violation means "that the plaintiff has stated a claim upon which relief may be granted." *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

A right is clearly established where it is "sufficiently clear that a reasonable official" would comprehend his actions violate that right. *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016) (quotation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation omitted). In other words, the contours of the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741

(quotations and alterations omitted).  The Supreme Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*

3.    Analysis

a.    First Amendment Retaliation Claim (Count I)

The First Amendment prohibits direct limits on individual speech as well as "adverse governmental action against an individual in retaliation for the exercise of protected speech activities."  *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (per curiam) (quotation omitted).  To support a First Amendment retaliation claim, a plaintiff must show that:

> (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

*Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (quotation and alterations omitted).

For the second element, "a retaliation claim requires some showing that the plaintiff's exercise of free speech has been curtailed."  *Id.* (quotation and alterations omitted).  "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights, it need not be great in order to be actionable."  *Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) (quotation omitted).  "Certainly, some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment."  *Keenan v. Tejeda*, 290 F.3d

252, 258 (5th Cir. 2002).  Being "the victim of criticism, an investigation (or an attempt to start one), and false accusations," and "[b]eing subjected to and defending oneself from an investigation while suffering its concomitant stress," do not satisfy the injury requirement, and thus are not actionable under the First Amendment.  *Reitz*, 85 F.4th at 790.  To show actual curtailment of speech "does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation."  *Keenan*, 290 F.3d at 260.

Defendants first argue that Rosenberg has filed an improper shotgun pleading, which "'fails to adequately link the causes of action to their attendant factual predicates' as the Federal Rules require."  Mem. [28] (quoting *White v. City of Grenada*, No. 4:20-CV-161-SA-JMV, 2021 WL 4449276, *5 (N.D. Miss. Sept. 28, 2021)).  "A 'shotgun pleading' is a pleading with 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims [are] brought against.'"  *Jones v. Grapeland Indep. Sch. Dist.*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) (per curiam) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

The Amended Complaint [3] consists of 39 pages of single-spaced allegations, followed by nine claims.  *See* Am. Compl. [3] at 1-39.  Count I for First Amendment retaliation reads as follows:

1.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
2.    Defendants, acting individually and in concert under color of state law, retaliated against Plaintiff for engaging in constitutionally protected speech, including but not limited to journalism critical

14

of public officials, public records requests, and the filing of a notice of intent to sue.

3.    As detailed in the Factual Background, Defendants' retaliatory actions include threats, denial of services, dissemination of defamatory claims, selective enforcement of ordinances, suppression of public access, and interference with Plaintiff's right to petition and report on government activity. These examples are representative and do not reflect the full scope of the retaliation.

4.    Defendants' actions were motivated by animus toward Plaintiff's protected activity and were intended to chill or punish his exercise of First Amendment rights.

*Id.* at 40.

Count I is advanced against multiple Defendants but does not specify which Defendant is responsible for which acts or omissions. *See id.* This makes it an impermissible shotgun pleading, *see Jones*, 2024 WL 4490604, at *1 n.1; *Weiland*, 792 F.3d at 1323, where Rosenberg has not adequately pled that "each Government-official defendant, through the official's own individual actions," violated the First Amendment, *Iqbal*, 556 U.S. at 676. The individual Defendants are therefore entitled to qualified immunity as to Count I.

Even if the Court attempted to wade through the 39 pages of haphazard factual allegations, it can discern no adequately-pled First Amendment retaliation claim against any individual Defendant. Specifically, Rosenberg has not sufficiently alleged that any Defendant's actions were taken in retaliation for protected activity and that those actions actually curtailed his speech. *See Reitz*, 85 F.4th at 789-90. The Amended Complaint [3] offers conclusory assertions that Defendants as a group "engaged in a pattern of retaliatory and defamatory conduct *aimed at* silencing Plaintiff's reporting and chilling his exercise of constitutionally

protected activities." Am. Compl. [3] at 7 (emphasis added); *see also, e.g., id.* at 40 ("Defendants' actions were motivated by animus toward Plaintiff's protected activity and were intended to chill or punish his exercise of First Amendment rights.").

But Plaintiff must set forth factual contentions concerning each official's individual conduct and how that conduct violated his constitutional rights. *See Iqbal*, 556 U.S. at 676. The conclusory allegations or legal conclusions masquerading as factual contentions that are stated are insufficient to withstand a motion to dismiss. *See Nix*, 62 F.4th at 928; *Taylor*, 296 F.3d at 378; *see also, e.g.,* Am. Compl. [3] at 35-36 ("The actions of the City of Ocean Springs and its officials have had a profound chilling effect on Plaintiff's ability to perform his duties as a journalist and have sent a message to all residents and journalists that public accountability will be met with retaliation . . . . This chilling effect discourages other journalists and members of the community from engaging in open discourse, thereby eroding public trust in local government and diminishing transparency."); *id.* at 38 ("By targeting Plaintiff for his factual reporting, Defendants have sent a chilling message to journalists and residents alike: dissent and public accountability will be met with retaliation."). Plaintiff's mere conclusory assertion of a "chilling effect" does not plead actual curtailment of his speech. *See* Am. Compl. [3] at 35-36; *Nix*, 62 F.4th at 928; *Taylor*, 296 F.3d at 378; *see also, e.g., Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) ("Spear's allegation of a chill, however, was conclusory and speculative. The complaint offered nothing beyond a bare assertion that the lawsuit 'caus[ed] a chilling effect upon his First Amendment rights of the press and speech.'"). Nor are Plaintiff's allegations against Defendants collectively

sufficient to plausibly allege that his exercise of free speech has been curtailed by each official's individual actions. *See* Am. Compl. [3]; *Iqbal*, 556 U.S. at 676; *Reitz*, 85 F.4th at 789.

The Amended Complaint [3] does assert that, "[a]s a direct result of the retaliatory actions detailed in this complaint, Plaintiff's anticipated long term employment with the Ocean Springs Weekly Record was downgraded to freelance submissions and eventually severed completely." Am. Compl. [3] at 39. This action was purportedly taken by the publisher "[u]nder the weight of mounting legal threats and the financial burden of potential litigation," because "the city's coordinated campaign—including the threats from *Wilkinson's legal teams*—had forced her to terminate Plaintiff's working relationship with the paper." *Id.* at 23 (emphasis added). In other words, Rosenberg claims that the so-called "pressure campaign" from attorneys representing the City Attorney Wilkinson led to his job loss, as his publisher "began receiving multiple cease and desist letters from attorneys representing Defendant Robert Wilkinson and his private business interests," which "accused the publication of defamation and threatened legal action in response to articles written by Plaintiff . . . ." *Id.*

But these allegations only reference Wilkinson, not that of any other Defendant. *See id.* To the extent Wilkinson qualifies as a state actor, Rosenberg has not cited controlling legal authority clearly establishing that threats by a state actor's private attorney to initiate judicial process for alleged defamation satisfies the injury requirement or is actionable under the First Amendment. *See Reitz*, 85 F.4th at 790; Am. Compl. [3]; Resp. [31]; Mem. [32]; *see also, e.g., Bass v. Parkwood*

*Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) ("Private action may be deemed state action, for purposes of section 1983, only where the challenged conduct may be 'fairly attributable to the State.'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  Nor has Rosenberg shown that the unlawfulness of Wilkinson's own actions was apparent in the light of pre-existing law.  *See Anderson*, 845 F.3d at 599.  This is insufficient to overcome Wilkinson's invocation of qualified immunity.  *See id.*; *al-Kidd*, 563 U.S. at 741.

In addition to his termination from the Ocean Springs Weekly Record, the Amended Complaint [3] alleges that "Gaston removed Plaintiff from the city's media notification list" because she was "tired of him," not because of any protected activity.  Am. Compl. [3] at 9.  And Rosenberg was later reinstated to the list "after a formal request was sent" to a deputy city clerk.  *Id.*  Even if Gaston being "tired of" Rosenberg could be liberally construed as retaliatory animus due to protected activity, the Amended Complaint [3] does not allege that this temporary removal curtailed Rosenberg's speech, which is necessary to state a retaliation claim.  *See id.*; *see Reitz*, 85 F.4th at 789.  Rosenberg does not say for how long he was excluded from the list before the voluntary reversal occurred, nor does he cite authority showing that the unlawfulness of Gaston's removal of him from the list was apparent in light of pre-existing law.  *See* Am. Compl. [3]; *Anderson*, 845 F.3d at 599.  Because the Amended Complaint [3] fails to overcome any Defendant's qualified immunity, their Motion [27] should be granted as to the First Amendment retaliation claim and Count I should be dismissed.

b.    <u>Fourteenth Amendment Equal Protection Claim (Count II)</u>

Rosenberg claims that Defendants treated him differently from similarly situated individuals because of his constitutionally protected activities.  *See* Am. Compl. [3] at 41.  The Fourteenth Amendment commands in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. 14, § 1.  "Generally, to establish a Fourteenth Amendment equal protection claim the plaintiff must prove that similarly situated individuals were treated differently."  *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quotation and alteration omitted).  Because the protection "reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more *relevant* persons or groups, then the action does not deny equal protection of the laws."  *Id.* (quotation omitted) (emphasis in original); *see Hines v. Quillivan*, 982 F.3d 266, 272-73 (5th Cir. 2020) (quotation omitted).  To be similarly situated, the comparators must be "in all relevant respects alike."  *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022) (quotation omitted).  And a plaintiff must show that similarly situated individuals were treated differently from him.  *See Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

To the extent a plaintiff argues selective enforcement of laws, "[t]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."  *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  "Rather, it must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard

such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler*, 368 U.S. at 456); *see Bryan*, 213 F.3d at 277. "[R]etaliation for an attempt to exercise one's . . . right to free speech would be expected to qualify." *Bryan*, 213 F.3d at 277 n.18.

Count II of the Amended Complaint [3] is advanced against Defendants Holloway, Burgess, Gaston, Papania, Impey, Wilkinson, Williams, Munro, Lemaire, John/Jane Does 1-10, and the City. *See* Am Compl. [3] at 40-41. It states that:

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
2. The Equal Protection Clause of the Fourteenth Amendment prohibits government officials from selectively enforcing laws or policies based on a citizen's viewpoint, protected speech, or personal identity.
3. Defendants, acting under color of law, treated Plaintiff differently from similarly situated individuals solely because of his constitutionally protected activities, including his investigative journalism, criticism of public officials, and public records inquiries.
4. As described in the Factual Background, Defendants engaged in a pattern of discriminatory enforcement and denial of services: refusing to respond to Plaintiff's requests, publicly disavowing their duty to represent him, withholding public information routinely given to others, and selectively applying laws and policies to hinder Plaintiff's access and expression. These incidents are illustrative and do not represent the full extent of unequal treatment.
5. Defendants' actions were not based on any legitimate governmental interest, but rather on animus toward Plaintiff's viewpoint and intent to suppress dissent and public accountability. This unequal treatment violated Plaintiff's rights under the Fourteenth Amendment.

*Id.* at 41.

Like Count I, Count II is brought against multiple Defendants but does not specify which of them is responsible for which acts or omissions. *See id.* This makes Count II an impermissible shotgun pleading, *see Jones*, 2024 WL 4490604, at

*1 n.1; *Weiland*, 792 F.3d at 1323, and the conclusory allegations and legal conclusions it sets forth are not sufficient to defeat Defendants' Motion [27] to Dismiss, *see Taylor*, 296 F.3d at 378.  Because Rosenberg has not adequately pled that "each Government-official defendant, through the official's own individual actions, has violated" the Fourteenth Amendment, *Iqbal*, 556 U.S. at 676, Count II should be dismissed as to all of the individual Defendants.

Even parsing through the other allegations in Amended Complaint [3] that are not specifically included in Count II, dismissal remains appropriate as to the individual Defendants.  *See* Am. Compl. [3].  First, Rosenberg has not provided an example of any similarly situated comparator, nor has he provided an example of how any laws or policies were applied to a comparator in a manner differently from how they were applied to him.  *See id.*  This is fatal to his equal protection claim. *See Texas Ent. Ass'n, Inc.*, 10 F.4th at 513; *Golden Glow Tanning Salon, Inc.*, 52 F.4th at 978; *Bryan*, 213 F.2d at 276-77.

As for his claim of selective enforcement, Rosenberg has not plausibly alleged that any individual Defendant selectively enforced any law, rule, or policy against him.  Even if he had, Rosenberg has not plausibly alleged that any Defendant's acts were motivated by improper considerations, such as his race, religion, or other arbitrary classification, or by any desire to prevent the exercise of Rosenberg's constitutional rights.  *See Bryan*, 213 F.2d at 277; *Allred's Produce*, 178 F.3d at 748. And "[t]he mere existence of disparate treatment—even widely disparate treatment—does not furnish adequate basis that discrimination was impermissibly motivated."  *Cook v. Hopkins*, 795 F. App'x 906, 916 (5th Cir. 2019).  To the extent

21

Rosenberg relies upon Defendants' alleged retaliation for his protected speech, this is simply a repackaging of his First Amendment claim, which fails for the same reasons as Count I. Count II should be dismissed as to the individual Defendants.

c.    <u>Fourth Amendment Unlawful Search and Seizure Claim (Count IV)</u>

Count IV advances a claim for unlawful search and seizure under the Fourth Amendment against Defendants Holloway, Gaston, John/Jane Does 1-10, and the City.  *See* Am. Compl. [3] at 42-43.  Rosenberg bases this claim upon "the installation and use of audio surveillance devices inside City Hall without public notice, signage, or policy," which he claims captured conversations he had in the hallway outside the Board of Aldermen meeting room.  *Id.* at 42.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const., amend. IV.  "The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy."  *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quotation omitted).    To determine if there has been an unlawful infringement of a person's Fourth Amendment rights, a court "uses a two-part inquiry: 'first, has the individual manifested a subjective expectation of privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?'"  *United States v. Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987) (quoting *Ciraolo*, 476 U.S. at 211).

It is "well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable

expectation of privacy in it." *Terrence Byrd v. United States*, 584 U.S. 395, 404 (2018). But a legitimate expectation of privacy "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* at 405 (quotation omitted).

For oral communications, the expectation of privacy "may, but does not necessarily, turn on the physical characteristics of the place or property in which the speech takes place." *Kee v. City of Rowlett*, 247 F.3d 206, 213 (5th Cir. 2001). In determining the expectation of privacy afforded to oral communications in publicly accessible spaces, a court should consider factors such as:

> (1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating.

*Id.* at 213-15 (footnotes omitted).

Count IV reads as follows:

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
2. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, including warrantless government surveillance that invades areas where a person has a reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347 (1967). This protection extends to audio recordings of conversations in semi-private spaces not marked or designated for public monitoring.
3. The City of Ocean Springs, through its agents and employees, caused or allowed the installation and use of audio surveillance devices inside City Hall without public notice, signage, or policy.

The devices captured conversations in the hallway outside the Board of Aldermen meeting room, a location where private and semi-private conversations frequently occur between journalists, officials, and residents.

4.    Plaintiff conducted numerous personal and professional conversations in this hallway, including phone calls and interviews, with a reasonable expectation of privacy and no knowledge that audio surveillance was occurring. No signs or warnings were posted, and the City later admitted it had no policy governing who could access the recordings, how often, or for what purpose.

5.    Plaintiff sent a formal inquiry to City Clerk Patty Gaston on June 2, 2025, seeking confirmation about the extent of access to the recordings. Gaston did not respond. Meanwhile, whistleblowers confirmed that city staff routinely accessed recordings, including following public meetings.

6.    This warrantless, non-consensual audio surveillance violated Plaintiff's clearly established Fourth Amendment rights. Defendants failed to demonstrate any lawful basis, public safety justification, or procedural safeguards associated with the recordings. The absence of access controls, retention policies, or oversight further underscores the unconstitutional nature of the surveillance.

7.    As a direct result of this practice, Plaintiff suffered a violation of his privacy, emotional distress, and a chilling effect on his ability to gather news and speak freely. Defendants are liable under 42 U.S.C. § 1983 for the violation of Plaintiff's Fourth Amendment rights.

8.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including but not limited to emotional distress, reputational harm, loss of professional opportunities, and violation of constitutional rights, for which he seeks compensatory and punitive damages.

Am. Compl. [3] at 42-43.

Like the other federal claims, Count IV is lodged against multiple Defendants but does not specify which of them is responsible for implementing, installing, maintaining, or continuing the audio recording. *See id.* This too constitutes an impermissible shotgun pleading, *see Jones*, 2024 WL 4490604, at *1 n.1; *Weiland*, 792 F.3d at 1323, in which Rosenberg has not adequately pled that "each

24

Government-official defendant, through the official's own individual actions"
violated the Fourth Amendment, *Iqbal*, 556 U.S. at 676.  And the individual
Defendants cannot be held liable based on a theory of vicarious liability for the
actions of other persons.  *See id.*  Defendants Holloway, Gaston, and John/Jane
Does 1-10 are therefore entitled to qualified immunity as to Count IV.  *See id.*; *al-
Kidd*, 563 U.S. at 735.

Moreover, it is unclear from the remainder of the allegations in the Amended
Complaint [3] which of the named individual Defendants, if any of them,
implemented, installed, maintained, or continued any audio surveillance in City
Hall.  *See* Am. Compl. [3].  According to Rosenberg, "the City of Ocean Springs had
been secretly recording audio of conversations in public areas of City Hall . . . ." *Id.*
at 28.  Unnamed "City officials confirmed the existence of the recording system and
admitted in writing that no policies governed who could access the recordings, no
logs were kept, and that the surveillance system had been in place since at least
October 2021." *Id.*  Although Rosenberg alleges that Mayor Holloway stated that
"signage would be ordered to warn the public," but that no sign was ever ordered,
and that Gaston did not respond to a request about access to the recordings, the
Amended Complaint [3] does not set forth factual contentions that either Holloway
or Gaston implemented, installed, maintained, continued, or accessed the audio
surveillance or recordings.  *Id.* at 29.

Nor does the Amended Complaint [3] sufficiently allege facts that would
establish Rosenberg had a reasonable expectation of privacy in the public hallways
of City Hall.  *See* Am. Compl. [3].  Rosenberg acknowledges that the audio

recordings he believes were made of him took place in a public hallway "outside the Board of Aldermen meeting room-a space where journalists, city staff, and residents frequently gather to speak before and after meetings," *id.* at 28, which indicates the proximity or potential of other individuals to overhear Rosenberg's conversations, that the location was a place or location where a reasonable person would expect to be overheard, and that the potential for Rosenberg's communications made there to be reported was significant, all of which weigh against finding a reasonable expectation of privacy, *see Kee*, 247 F.3d at 213-15.  The Amended Complaint [3] does not plead any facts tending to show the volume of Rosenberg's communication or that conversations were particularly low in an attempt to avoid others overhearing, that he took any other affirmative actions to shield his privacy, or that there was any need for technological enhancements to hear the communications. *See id.* at 213-15.  Based upon the facts pled, Rosenberg had no reasonable expectation of privacy in the public hallways of City Hall, and his Fourth Amendment claim fails.  *See id.*; *Ciraolo*, 476 U.S. at 211; *Cuevas-Sanchez*, 821 F.2d at 251.

d.    <u>Official Capacity Claims against Individual Defendants</u>

Rosenberg also sues the individual Defendants in their official capacities.  *See* Am. Compl. [3].  Suits against officers in their official capacities are tantamount to suits against the municipality.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  Because the City is a party to this case, the official capacity claims against the individual Defendants are redundant of those against the City and should be dismissed.  *See Sanders-Burns v. City of Plano*, 594

F.3d 366, 373 (5th Cir. 2010); *Tinoco v. City of Hidalgo*, No. 23-40543, 2025 WL

655079, at *8 (5th Cir. Feb. 28, 2025) (per curiam).

e.    Municipal Liability Claims against the City (Counts I, II, IV, and VIII)

(1)    Relevant Legal Authority

"[A] municipality cannot be held liable solely because it employs a

tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on

a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  "Instead, it is when

execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury that the government as an entity is responsible under § 1983." *Id.*

To state a § 1983 claim against a municipality, "the unconstitutional conduct

must be directly attributable to the municipality through some sort of official action

or imprimatur; isolated unconstitutional actions by municipal employees will

almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th

Cir. 2001) (footnote omitted).  A § 1983 plaintiff must show "(1) an official policy (or

custom), of which (2) a policy maker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose moving force is that policy (or

custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)

(quotations omitted).

A policy's existence "can be shown through evidence of an actual policy,

regulation, or decision that is officially adopted and promulgated by lawmakers or

others with policymaking authority."   *Valle v. City of Houston*, 613 F.3d 536, 542

(5th Cir. 2010).  "In the alternative, the plaintiff may demonstrate a persistent

widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010) (quotation omitted). While "[a] single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable," the Fifth Circuit has held that this "'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (quotations and alterations omitted).

"[A]ctual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Id.* (quotation and alterations omitted). The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority," and a "municipal policymaker is someone who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur*, 475 U.S. at 481). And whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law. *Id.*

The third prong of the municipal-liability analysis "requires a plaintiff to prove 'moving force' causation." *Id.* To succeed, the § 1983 plaintiff "must show

that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). To do so, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411). Deliberate indifference is a high standard, and "a showing of simple or even heightened negligence will not suffice." *Id.* (quotation omitted).

(2)   First Amendment Retaliation (Count I) and Fourteenth Amendment Equal
      Protection Claims (Count II)

The Amended Complaint [3] alleges that Mayor Holloway "possesses final policymaking authority in matters of administration, public communications, and enforcement of city policies" and "used his authority to engage in retaliatory conduct," reflecting "the City's de facto policy of silencing dissent . . . ." Am. Compl. [3] at 3. Rosenberg contends that the actions of City officials detailed in his pleadings are evidence "of a broader policy, pattern, or custom of retaliatory conduct against critics and journalists by Ocean Springs officials." *Id.* at 24; *see id.* at 25.

The Amended Complaint [3] claims that Holloway, "acting in his official capacity as a final policymaker for the City of Ocean Springs, authored and published an editorial in the *Ocean Springs Weekly Record* entitled 'From the Desk of the Mayor.'" *Id.* at 31. In it, Holloway "publicly characterized online political criticism as 'spewing hate,' labeled citizen questions as 'suspicion or doubt,' and asserted that residents should 'step back from the keyboard' rather than continue to

express dissent," and "that the spread of 'misinformation' was 'killing the charm of our small town,' without defining the term." *Id.* According to Rosenberg, while "couched as a call for civility, the editorial explicitly discouraged political discourse, framed dissent as harmful, and praised those who expressed only positive messages." *Id.* at 32. Rosenberg claims that the editorial "served as an official ratification of the City's broader practice of discrediting and retaliating against critics, particularly journalists and residents who challenge municipal decisions, and is consistent with the pattern of conduct described throughout this Complaint." *Id.* Further, "[t]he editorial reinforced a municipal custom of discouraging protected speech and created a chilling effect on those seeking to engage in public discourse about matters of governmental concern." *Id.*

Rosenberg cites to no official policy formally announced by a policymaker. *See id.*; *Zarnow*, 614 F.3d at 168; *Valle*, 613 F.3d at 542. And to the extent he relies on the single-incident exception, it is "extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542. Even if Holloway were considered a final policymaker, the Amended Complaint [3] lacks sufficient factual detail that Holloway "committed a single constitutional violation sufficient to confer liability on the City," with respect to either the First or Fourteenth Amendments. *Zarnow*, 614 F.3d at 170. The Amended Complaint [3] does not sufficiently allege that Holloway's editorial, or any other action by him, curtailed Rosenberg's exercise of free speech, to support a First Amendment retaliation claim. *See* Am. Compl. [3]; *Reitz*, 85 F.4th at 789. Nor does it identify any similarly situated comparator to Rosenberg or plausibly allege how any laws or

policies were applied by Holloway to a comparator in a manner different from the way they were applied to Rosenberg.  *See Texas Ent. Ass'n, Inc.*, 10 F.4th at 513; *Golden Glow Tanning Salon, Inc.*, 52 F.4th at 978; *Bryan*, 213 F.2d at 276-77. Finally, the Amended Complaint [3] does not sufficiently allege how Holloway selectively enforced any law, rule, or policy against Rosenberg based upon improper considerations.  This is fatal to the Fourteenth Amendment equal protection claim against the City.  *See Bryan*, 213 F.2d at 277; *Allred's Produce*, 178 F.3d at 748.

The Amended Complaint [3] also lacks factual detail demonstrating any persistent widespread practice of City officials or employees related to either First Amendment retaliation or Fourteenth Amendment equal protection violations that "is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168-69 (quotation omitted).  And Rosenberg's conclusory assertions that the City had such a custom or policy "will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

Even if there was some type of widespread practice in either regard, the Amended Complaint [3] does not plead facts showing actual or constructive knowledge of a custom "attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542 (quotation and alterations omitted).   Nor has Rosenberg adequately pleaded sufficient factual allegations showing "'moving force' causation," meaning that the City's decision "reflect[ed] deliberate indifference to the risk that a violation of [the First or Fourteenth Amendment would] follow the decision." *Id.*

31

The Amended Complaint [3] does not adequately plead municipal liability as to the First and Fourteenth Amendment claims.  *See id.*

(3)  <u>Fourth Amendment Unlawful Search and Seizure Claim (Count IV)</u>

Rosenberg makes the conclusory statement that the "City maintained and used this surveillance system," but he also alleges that there was a "lack of any written policy, oversight, or signage" by the City concerning the audio surveillance. Am. Compl. [3] at 29.  "The City of Ocean Springs, through its agents and employees, caused or allowed the installation and use of audio surveillance devices inside City Hall without public notice, signage, or policy."  *Id.* at 42; *see also id.* at 42-43 (alleging that "the City later admitted it had no policy governing who could access the recordings, how often, or for what purpose," but "whistleblowers confirmed that [unidentified] city staff routinely accessed recordings, including following public meetings").  Such conclusory allegations are insufficient to show that the City had a custom or policy.  *See Taylor*, 296 F.3d at 378.

Moreover, as the Court has already determined, the Amended Complaint [3] does not establish that Rosenberg had a reasonable expectation of privacy in the public hallways of City Hall.  *See* Am. Compl. [3]; *Ciraolo*, 476 U.S. at 211; *Cuevas-Sanchez*, 821 F.2d at 251.  By failing to adequately plead an underlying Fourth Amendment claim, this claim against the City fails.  *See Newbury*, 991 F.3d at 680.

(4)  <u>Municipal Liability (Count VIII)</u>

In this final federal claim against the City, Rosenberg makes the conclusory assertion that the City "acted under color of state law through its officials, agents, and employees, including those with final policymaking authority," and that the

violations of his constitutional rights "were carried out pursuant to the City's official policies, widespread practices, or deliberate decisions by officials with final authority." Am. Compl. [3] at 46.

> These constitutional violations were not isolated acts by rogue employees but were part of an entrenched and coordinated pattern of behavior by senior City personnel, including the Mayor, City Attorney, members of the Board of Aldermen, and department heads. The City either directed these actions, had actual knowledge of them and failed to intervene, or maintained customs and practices that encouraged or condoned such conduct.

*Id.*

Rosenberg alleges that the City failed "to discipline, supervise, or correct unlawful actions by its officials, combined with its retaliatory posture toward dissent," directly resulting in the harms he suffered, and it "also failed to implement or enforce adequate safeguards to prevent these types of constitutional abuses." *Id.* According to the Amended Complaint [3], "[a]s a direct and proximate result of the City's policies, customs, and deliberate indifference, Plaintiff suffered violations of his constitutional rights, including deprivation of free speech, privacy, access to government, and equal protection under the law." *Id.* at 47.

The foregoing is likewise insufficient, *see Taylor*, 296 F.3d at 378, and the Court has already addressed how Rosenberg has not stated an underlying constitutional violation under the First, Fourth, or Fourteenth Amendments. Count VII, which essentially reasserts these federal claims, should be dismissed for failure to state a claim against the City.

f.    Whether the Court Should Allow Rosenberg to Amend

Rosenberg states in his brief in opposition to Defendants' Motion [27] to Dismiss that, "[i]f the Court seeks additional particulars (e.g., exemplar dates/quotes . . . ), Plaintiff requests leave under Rule 15(a)(2) to amend within 14 days." Mem. [32] at 7 (emphasis removed).   First, Rosenberg's request is procedurally improper to the extent he includes a motion to amend in his response. *See Williams v. BFI Waste Servs., LLC*, No. 3:16-CV-75-DPJ-FKB, 2017 WL 1498230, *3 (S.D. Miss. Apr. 24, 2017) (stating "a motion cannot be asserted in the body of a response"); L.U. Civ. R. 7(b)(3)(C).   "Generally, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Hicks v. Ashworth*, No. 24-20331, 2025 WL 3281407, at *4 (5th Cir. Nov. 25, 2025) (per curiam) (quotation omitted).

For a pro se plaintiff, the Fifth Circuit has indicated that a district court should consider such a request "to be a motion to amend to include the new factual allegations" set forth in the brief. *Id.*  Here, however, Rosenberg did not set forth any new factual allegations that would, in conjunction with his Amended Complaint [3], plausibly state a federal claim against any Defendant. *See id.*; Mem. [32]; Am. Compl.  Rosenberg has not submitted a proposed pleading or stated what facts he could include to cure the deficiencies in his pleadings.  This "'bare request in an opposition [to] a motion to dismiss' absent particular grounds is inadequate," because "[w]hen seeking leave to amend, the movant must set forth 'with particularity the grounds for the amendment and the relief sought.'" *Diagnostic*

34

*Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 611 (S.D. Tex. 2023) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)).  Second, Rosenberg has already taken one opportunity to amend, filing his Amended Complaint [3] as a matter of course under Rule 15(a)(1), and even considering those allegations in conjunction with his Memorandum [32], he has still failed to provide sufficient details to support his federal claims.  *See* Fed. R. Civ. P. 15(a)(1); Am. Compl. [3].  For these reasons, Rosenberg's passing request to amend in his Memorandum [32] is not well taken and should be denied.

"When the dismissal of a pro se complaint is appropriate, it *should generally* be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *James v. Smith*, 152 F.4th 594, 610 (5th Cir. 2025) (emphasis in original) (quotation omitted).  But "a district court may dismiss with prejudice if the plaintiff has been given adequate opportunity to cure the inadequacies in his pleading or if the pleadings demonstrate that the plaintiff has pleaded his *best case*." *Id.* (emphasis in original) (quotation omitted).

In this case, Rosenberg has previously amended his pleadings one time, and in his Memorandum [32] in opposition to the Motion [27] to Dismiss, he makes an unsupported, bare request to amend.  Mem. [32] at 7.  Based on the current record, and given Rosenberg's pro se status, the Court finds that his federal claims should be dismissed without prejudice at this time.  *See id.*; *James*, 152 F.4th at 610.

g.    Exercise of Supplemental Jurisdiction

Because the Court has determined that all of Rosenberg's federal claims should be dismissed, the only remaining claims are ones under state law for

violation of the Mississippi Public Records Act, Miss. Code Ann. § 25-61-1, et seq. (Count III); defamation (Count V); defamation per se (Count VI); intentional infliction of emotional distress (Count VII); and violation of the Mississippi Security of Communications Act, Miss. Code Ann. §§ 41-29-531 to -537 (Count IX).  *See* Am. Compl. [3] at 40-47.  The Court questions whether it should decline to exercise supplemental jurisdiction over these remaining claims under 28 U.S.C. § 1367(c).

Section 1367(a) affords supplemental jurisdiction over state-law claims not within the Court's original jurisdiction, but that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  But the statute also "spells out circumstances . . . in which a federal court may decline to hear a state claim falling within the statute's bounds," *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025), including if "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam) (quotation omitted).  In deciding whether to exercise supplemental jurisdiction, a court considers the "common law factors of judicial economy, convenience, fairness, and comity." *Id.* (quotation omitted).  "And based on these factors, [the Fifth Circuit has] elucidated the general rule that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* (quotation omitted).

Considering the foregoing factors, the Court finds that it should decline to exercise supplemental jurisdiction over the remaining state-law claims, which are not within its original jurisdiction. *See id.*; 28 U.S.C. § 1367(c)(3). This case remains in its infancy, and no Case Management Order has been entered or trial date set. No discovery has occurred, and the federal-law claims will be dismissed well in advance of any trial. The Court therefore declines to exercise supplemental jurisdiction and will dismiss the remaining state-law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Eric Brian Rosenberg's Motion [33] to Supplement and Motions [52], [59] for Judicial Notice of Public Records are **DENIED**, and his Motion [43] to Strike is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants' Motion [27] to Dismiss Amended Complaint [3] is **GRANTED IN PART**, as to Plaintiff Eric Brian Rosenberg's federal claims, **and DENIED IN PART WITHOUT PREJUDICE**, as to his state-law claims.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Eric Brian Rosenberg's federal claims against all Defendants for retaliation in violation of the First Amendment (Count I); denial of equal protection in violation of the Fourteenth Amendment (Count II); audio surveillance constituting unlawful search and seizure in violation of the Fourth Amendment (Count IV); and municipal liability for the City under 42 U.S.C. § 1983 (Count VIII) are **DISMISSED WITHOUT PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff Eric Brian Rosenberg's remaining state-law claims, and his claims for violation of the Mississippi Public Records Act, Miss. Code Ann. § 25-61-1, et seq. (Count III); defamation (Count V); defamation per se (Count VI); intentional infliction of emotional distress (Count VII); and violation of the Mississippi Security of Communications Act, Miss. Code Ann. §§ 41-29-531 to -537 (Count IX) are **DISMISSED WITHOUT PREJUDICE**.  The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 24th day of February, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE